Argued and submitted January 28, 1986, reassigned March 4, decision of the Court of Appeals is affirmed as to the DUII conviction and reversed as to the Possession of a Controlled Substance conviction, trial court affirmed November 20, 1986

# STATE OF OREGON,
*Petitioner on Review/*
*Respondent on Review,*

*v.*

# BERNARD JOHN WESTLUND,
*Respondent on Review/*
*Petitioner on Review.*

(TC C83-01-30264; CA A28733; SC S32164; SC S32168)

729 P2d 541

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for petitioner on review/respondent on review. With him on the petition for review was Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Marc D. Blackman, Portland, filed the petition and argued the cause for respondent on review/petitioner on review. With him on the petition for review was Ransom, Blackman & Simson, Portland.

On the *amicus curiae* brief of the Oregon District Attorneys Association was Irvin D. Smith, President, Michael D. Schrunk, Vice-President, Brenda M. Fitzgerald, Alexander Gordon, and John C. Bradley, members.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

CARSON, J.

Lent and Linde, JJ., dissented and filed an opinion.

**CARSON, J.**

This case presents two issues: (1) whether the failure of a police officer to take an obviously intoxicated person into civil custody before the person operated a motor vehicle renders unlawful the person's arrest for Driving While Under the Influence of Intoxicants (DUII); and (2) whether a warrant is required to test the contents of a transparent vial, lawfully seized in a search incident to an arrest, when there is probable cause to believe that the vial contains a controlled substance.

## FACTS

On June 5, 1982, the Multnomah County Emergency Medical Center was notified that defendant was lying, apparently unconscious, under a motor vehicle in Portland. The ambulance attendant who arrived at the scene found that defendant was conscious, but intoxicated. Fearing that defendant would try to drive again after he changed a flat tire, the attendant flagged down a Portland police officer. Because that officer was responding to another call, she radioed a second officer, who came to the scene. This second officer parked two blocks away and observed defendant for five to seven minutes, while defendant struggled to change a flat tire and staggered across the street. The second officer concluded that defendant was obviously intoxicated, as did the first officer, who by then had returned to the scene and also observed defendant. Both officers believed that if defendant were to operate a motor vehicle, he would be a danger to himself or to others. The officers continued to observe defendant as he replaced the flat tire, got into his motor vehicle and started to drive away. Immediately, the second officer ordered defendant to pull over.

When the officer confronted defendant he noticed that defendant's eyes were bloodshot and watery and that he had the strong odor of alcohol on his breath. When defendant performed poorly on field sobriety tests, he was arrested for DUII. *Former* ORS 487.540. (The current version of this statute is codified at ORS 813.010.)

The officer searched defendant and found a transparent brown vial in his front pants pocket. The officer testified that, based upon his six years of experience as a police

officer and his specific training and experience in drug investigation, he was "90 percent" certain that the white powder in the transparent vial was a controlled substance. The officer seized the vial and sent it to the State Crime Laboratory for chemical analysis. The contents were determined to be cocaine. No search warrant was obtained before the vial was opened or its contents tested.

Seven months later, in January 1983, when defendant declined to plead guilty to the misdemeanor DUII charge, he was charged with felony Possession of a Controlled Substance. ORS 475.992(4).

Defendant filed a series of pre-trial motions to dismiss and to suppress evidence on the grounds, *inter alia,* that: (1) the crime (DUII) would never have occurred if the officer had followed his statutory duty under ORS 426.460 to take defendant into civil custody before he drove his motor vehicle; (2) the arrest and search incident thereto were illegal for the same reason; and (3) the warrantless seizure and opening of the vial were unlawful. The motions were denied.

Defendant was tried on stipulated facts and convicted of DUII and Possession of a Controlled Substance. He appealed. A majority of the Court of Appeals, *in banc,* affirmed the DUII conviction, but reversed and remanded as to the Possession conviction. *State v. Westlund,* 75 Or App 43, 705 P2d 208 (1985). A separate concurring opinion and two opinions, dissenting in part, were filed on the issue of the warrantless testing of the vial's contents. Both defendant and the state petitioned this court for review.

## CIVIL CUSTODY

Defendant asserts that ORS 426.460(1) mandates that a police officer take an obviously intoxicated person into civil custody and transport that person to a treatment facility, rather than observe him passively and allow him to drive a motor vehicle. ORS 426.460(1) provides:

"Any person who is intoxicated or under the influence of controlled substances in a public place may be taken or sent home or to a treatment facility by the police. However, *if* the person is incapacitated, the health of the person appears to be in immediate danger, or *the police have reasonable cause to believe the person is dangerous to self or to any other person,*

*the person shall be taken by the police to an appropriate treatment facility.* A person shall be deemed incapacitated when in the opinion of the police officer or director of the treatment facility the person is unable to make a rational decision as to acceptance of assistance." (Emphasis supplied.)

Defendant maintains that the officer's neglect of this statutory duty turned a civil problem (public intoxication) into a criminal offense (DUII). Defendant argues that such police conduct defeats the purpose of the statute, which is to decriminalize public intoxication. Defendant maintains that his arrest on a criminal charge was unlawful, and that the state should be denied the use of any evidence found as a result of the statutory violation.

The state concedes that the police officer violated ORS 426.460(1) by not promptly taking defendant into "protective civil custody" under the mandatory terms of the statute. It argues, however, that the proper issue is what sanction should be imposed for a statutory violation. The state suggests the statutory scheme contemplates that the officer may be held criminally or civilly liable for his actions pursuant to ORS 426.460, when they are not performed in good faith, on probable cause and without malice. ORS 426.470 provides:

"No peace officer, treatment facility and staff, physician or judge shall be held criminally or civilly liable for actions pursuant to ORS 426.450 to 426.470 and 430.315 to 430.335 provided the actions are in good faith, on probable cause and without malice."

The state also suggests that another possible sanction for police noncompliance with ORS 426.460(1) is personal liability of the police officer to an intoxicated person who injures himself or to third persons injured by the intoxicated person, citing *Nearing v. Weaver,* 295 Or 702, 670 P2d 137 (1983).

■ Assuming for the purposes of this opinion that the statute creates a mandatory duty, statutory violations by police officers do not necessarily require dismissal of criminal charges or exclusion of evidence. *State v. Valdez,* 277 Or 621, 629, 561 P2d 1006 (1977). In the absence of legislative direction, we look to the character of the statutory rule to determine whether a violation calls for exclusion of the resulting evidence. When the purpose of a statute is to protect citizens

against violation of their constitutional rights, such as the unauthorized searches or seizures of their persons, property or effects, the exclusionary rule will be applied to protect those interests. *State v. Davis,* 295 Or 227, 237, 666 P2d 802 (1983). But where the purpose of a statute is something other than the protection of privacy or property rights, the sanction of denying the state the use of evidence obtained by a statutory violation will not be applied. *See, e.g., State v. Cortman,* 251 Or 566, 446 P2d 681 (1968) (purpose of "knock and announce" statutes is to protect safety of officer and others at the scene of a sudden, unexplained break-in, so exclusionary rule not applied); *State v. Ness,* 294 Or 8, 653 P2d 548 (1982); *State v. Brock,* 294 Or 15, 653 P2d 543 (1982) (evidence not suppressed for violation of statutory requirements regarding nighttime execution of search warrants).

■ ORS 426.460(1) was enacted for the purpose of decriminalizing such crimes as "public intoxication," and to provide treatment for substance abusers.[1] Although the legislative history is relatively sparse, we conclude that the interest protected by ORS 426.460(1) is the prevention of injury to the intoxicated person or to others. The purpose is unrelated to protecting persons from illegal searches or seizures. Furthermore, we find no indication that the legislature intended to immunize intoxicated persons from criminal prosecution for otherwise criminal conduct. The rationale behind the legislation was that intoxication *without more* should be dealt with by the state as a civil problem. Defendant's conduct herein amounted to more than public intoxication.

■ Finally, the alleged statutory violation by the police in this case does not rise to the level of entrapment[2] or "conduct of law enforcement agents * * * so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell,* 411 US 423, 431-32, 93 S Ct 1637; 36 L Ed 2d 366 (1973). Passive observation of an accused's conduct is not akin to the police overreaching that actually creates criminal conduct. Examples of the latter are where the police set up the accused in illegal activities (*United States v.*

[1] Or Laws 1971, ch 622, § 7.

[2] *See* ORS 161.275.

*West,* 511 F2d 1083 (3d Cir 1975)) or supply the accused with the needed ingredients, supplies and actually manufacture a controlled substance for him (*United States v. Twigg,* 588 F2d 373 (3d Cir 1978)).

While we express no opinion about the sanctions suggested by the state for violations of ORS 426.460(1), we hold that the police action or inaction herein does not require dismissal of the criminal charges against defendant or the exclusion of evidence against him in his criminal case. We affirm the Court of Appeals as to the DUII conviction.

## CONFIRMATORY CHEMICAL TESTING OF THE VIAL'S CONTENTS

Following defendant's arrest for DUII, the police officer searched defendant's person, seized the vial (an "effect" protected by Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution), and sent the vial to the State Crime Laboratory where it was opened and its contents analyzed to confirm the officer's reasonable belief that it contained a controlled substance.

■ The issues in this case have been narrowed because, apart from the civil custody argument discussed above, defendant does not here challenge the first two intrusions. Throughout this proceeding, defendant has conceded that the search of his person incident to his arrest for DUII and the discovery of the vial were valid, if the arrest were valid. At oral argument to this court, defendant further conceded that the officer had probable cause to believe that the vial contained a controlled substance. Based upon the officer's testimony regarding his experience and training in drug investigations and his "90 percent" certainty that the white powder visible inside the transparent vial was a controlled substance, the trial court necessarily found, and we agree, that the officer had probable cause to believe that the vial contained a controlled substance. When an officer has probable cause to believe that an object he has lawfully discovered is contraband and, therefore, that a crime is being committed in his presence, he has the right to seize it. *State v. Elkins,* 245 Or 279, 283, 422 P2d 250 (1966). Thus, the seizure of the vial was lawful.

■ For the reasons set forth in *State v. Owens,* 302 Or

196, 729 P2d 524 (1986), we hold that the confirmatory testing of the vial's contents was not a search and no warrant was required.

Defendant's final argument is that, because he was not charged with the crime of Possession of a Controlled Substance until six months after his arrest for DUII and the contemporaneous seizure and testing of the vial's contents, the search cannot be justified as related to his "arrest" on the Possession charge. We disagree. *See State v. Owens, supra.*

The decision of the Court of Appeals is affirmed as to the DUII conviction and reversed as to the Possession of a Controlled Substance conviction. The trial court is affirmed.

**LENT and LINDE, JJ.,** dissenting.

We dissent for the reasons expressed in our dissenting opinion in *State v. Owens,* 302 Or 196, 729 P2d 524 (1986).