Submitted on remand from the Oregon Supreme Court January 5, resubmitted
In Banc February 4, reversed March 18, 1987

## STATE OF OREGON,
*Appellant,*

*v.*

## MONIKA McCRORY,
*Respondent.*

(CC 85-405; CA A36092)

734 P2d 359

Jonathan H. Fussner, Assistant Attorney General, Salem, appeared for appellant. With him were Dave Frohnmayer,

Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Diane L. Alessi, Deputy Public Defender, Salem, appeared for respondent. With her was Gary D. Babcock, Public Defender, Salem.

WARDEN, J.

Buttler, J., specially concurring.

## WARDEN, J.

This case is on remand from the Oregon Supreme Court for reconsideration in the light of *State v. Owens,* 302 Or 196, 729 P2d 524 (1986). In our first opinion, *State v. McCrory,* 78 Or App 671, 716 P2d 776 (1986), we affirmed a pretrial order suppressing evidence.[1] In the light of *Owens,* we reverse.

In January, 1985, defendant was arrested for assault by officer Wojack. She was taken to the Coos County Holding Facility where, pursuant to a jail policy, all items in the pockets of her clothing were removed when she was "booked in" by deputy sheriff Wiggins. A small paperfold, commonly described as a "bindle," was found in her jacket pocket. The deputy gave the paperfold to Wojack, who testified that, on the basis of his training and his experience in the identification of controlled substances, he had reason to believe that it contained narcotics. He opened it and observed a white powder inside. The powder was then tested without first obtaining a search warrant. It was methamphetamine.

Defendant moved to suppress all evidence relating to the paperfold. She argued that the police acted illegally by (1) seizing and opening the paperfold, because the seizure was not incident to her arrest, and (2) testing the paperfold's contents, because no warrant was obtained. The motion was granted. The state appeals.

As to the initial seizure, defendant does not contest the legality of the inventory procedure whereby the police came into possession of the paperfold. Although a "booking in" inventory does not justify a general exploratory search and analysis of all items found, if in the course of a proper inventory evidence of another crime is discovered, the evidence may be seized upon probable cause to believe that it relates to another crime. *See State v. Elk,* 249 Or 614, 439 P2d 1011 (1968); *State v. Riner,* 6 Or App 72, 485 P2d 1234, *rev den* (1971).

In *State v. Owens, supra,* 302 Or at 207, the court stated:

"[W]e hold that, when there is probable cause to believe that a

---

[1] We cited *State v. Westlund,* 75 Or App 43, 705 P2d 208 (1985), which has since been affirmed in part and reversed in part. 302 Or 225, 729 P2d 541 (1986).

lawfully seized transparent container contains a controlled substance, opening the container, removing a modest quantity of its contents and subjecting it to chemical analysis for the sole purpose of confirming that it is a controlled substance, is not a 'search' or 'seizure' under the Oregon Constitution. * * * Article I, section 9, does not require that the police obtain a warrant before opening the transparent vial and clear plastic package lawfully seized from defendant's purse herein or testing their contents for the limited purpose of confirming the police officer's reasonable belief that they contained controlled substances."

Although *Owens* concerned a transparent container, its holding extends to those containers which otherwise "announce their contents." In *State v. Herbert,* 302 Or 237, 729 P2d 547 (1986), the Supreme Court expressly declined to decide whether the unique packaging of a paperfold alone might provide, to an officer with training and experience in the area of drug detection, probable cause to believe it contains a controlled substance.

"[W]e are not here required to decide whether an opaque paperfold is such a unique container of illicit drugs. In addition to the shape of the container, other facts gave the officer probable cause to believe that the paperfold contained a controlled substance." 302 Or at 242.

In this case, however, we must decide that issue, because there were no other facts to support a finding of probable cause.[2]

Wojack testified that the paperfold was made of a page torn from a magazine that was "folded up in a triangle-type of shape. It is folded so that it can't come open unless you pull it apart." In *State v. Herbert, supra,* the court similarly described a paperfold:

"The paperfold * * * was made from a page torn out of a magazine. The edges were folded in so that the contents would not fall out." 302 Or at 237 n 1.

The trial court in this case determined that Wojack and Wiggins had probable cause to believe the defendant was in possession of a controlled substance:

---

[2] Wojack testified that he was told about and had then seen needle marks on defendant's arm. However, that was not until after the paperfold had been opened. Wiggins testified that defendant appeared to be experiencing severe mood swings and to be under the influence of something, but Wiggins attributed them to ingestion of alcohol.

"Unlike the container in *State v. Lowry,* 295 Or 337, 346, 667 P2d 996 (1983), a paper 'bindle' would not be used for 'baby powder, or table salt or legitimate medicines,' although an inventive mind could claim defendant was merely in possession of a 'spit-wad'."[3]

Defendant argues, as did the defendant in *Herbert,* that a paperfold could just as well have been used to store or transport small items, such as unsnelled fish hooks, jewelry or radish seeds. We agree that that is "possible." Probable cause, however, does not require absolute certainty. *State v. Collicott,* 56 Or App 605, 642 P2d 1187, *rev den* 293 Or 190 (1982). Wojack's training and experience was sufficient to allow him to form a reasonable belief that the paperfold contained a controlled substance. Its seizure, therefore, was lawful, as was the subsequent opening and testing of its contents. *State v. Owens, supra.*

Reversed.

**BUTTLER, J.,** specially concurring.

This case was remanded to us to reconsider it in the light of *State v. Owens,* 302 Or 196, 729 P2d 524 (1986), which is the lead opinion for four cases decided by the Supreme Court on the same day that involve the common question of whether the police, after lawfully seizing a closed container, needed a warrant in order to open it and remove and test its contents to determine whether it contained a controlled substance. The other three cases are *State v. Westlund,* 302 Or 225, 729 P2d 541 (1986); *State v. Forseth,* 302 Or 233, 729 P2d 545 (1986), and *State v. Herbert,* 302 Or 237, 729 P2d 547 (1986), all of which expressly rely on *Owens.*

The majority has refused to apply the analysis adopted by the court in *Owens,* even though we were directed to reconsider this case in the light of that one. It has decided *only* that the officers had probable cause to seize the paperfold and, therefore, could open it and test its contents, quoting the ultimate conclusion of the court in *Owens. Owens,* however,

---

[3] The court defined the term:

"Spit-wad is the name of small, tightly folded pieces of paper moistened in the mouth and used by small boys as a projectile to be shot from a rubber band at other small boys, small girls, and teachers."

requires a two-step analysis, the first one requiring a determination that the seizure of the container was lawful. If so, it must then be determined whether the police could, without a warrant, open the container and remove its contents for chemical analysis. In applying that analysis, the court recognized that there are two incidents of constitutional significance involved—the initial seizure of the container and the opening of it—each of which requires separate analysis. It may be that in many, if not most, cases, the analysis of the second step will be perfunctory, because the container is transparent or otherwise announces its contents. However, if that is not the case, the second step becomes important and we should not ignore it, as the majority does in this case and in *State v. Larsen,* 84 Or App 403, 734 P2d 362 (1987).

In *Owens,* after concluding that the officer's warrantless seizure of a transparent vial from the defendant was lawful, because he had probable cause to believe that it contained a controlled substance, the court posed the next question: "whether the opening of a transparent container for the testing of its contents is a 'search' or 'seizure' under the Oregon Constitution, when there is probable cause to believe it contained a controlled substance." *State v. Owens, supra,* 302 Or at 205. In response to that question, it pointed out that, if those intrusions were searches or seizures, neither intrusion could be carried out without "probable cause *and* a search warrant *or* separate justification under one of the few, carefully circumscribed exceptions to the warrant requirement." 302 Or at 205. (Emphasis supplied.) The court stated that Article I, section 9, protects privacy and possessory interests, that a "search" occurs when a person's privacy interests are invaded and that some containers, which, by their very nature, announce their contents, do not support a cognizable privacy interest. It said that the transparent containers announced their contents the same as if their contents had been discovered in "plain view." Therefore, by analogy to the "plain view" doctrine, the court held that there was no "search," because no cognizable privacy interest inheres in the contents of transparent containers and that they could be opened and their contents seized without a warrant.

*Owens* went on to hold that, because the police were

authorized to open the closed container and to seize the contents, "a chemical test * * * to confirm the presence of whatever the police have probable cause to believe is present in that item" is not a "search," because it does not infringe any privacy interest protected by the Oregon Constitution. 302 Or at 206. It is not a "seizure," the court said, because there is no significant interference with a person's possessory or ownership interest in the property.

Westlund and Forseth involved transparent containers, as did Owens. In each case, after the court concluded that the warrantless seizure of the containers was lawful, the court went on to hold, without discussion, that they could be opened and their contents tested, citing Owens. Herbert was different from the other three cases, in that the closed container was an opaque paperfold, rather than a transparent container. For that reason, the majority here is justified in relying on it to some extent, but not to the exclusion of the analysis prescribed by Owens, on which Herbert relies. Concededly, Herbert is confusing, because, in deciding whether the officer had probable cause to seize the paperfold (the first step), the court stated that it was not necessary to decide whether an opaque paperfold is such a unique container for illicit drugs that it announces its contents. That was a correct statement, because there were other facts which, together with the type of container, provided probable cause to seize. However, in holding that the officer could take the next step of opening the container and testing its contents without a warrant, the court merely cited Owens, summarizing it briefly, as it did in Westlund and Forseth.

The majority here attributes sleight of hand to the Supreme Court by holding, apparently, that in Herbert the court disavowed its painstaking analysis in Owens, the lead case on which Herbert purports to rely. I would not do that. Herbert, Westlund and Forseth were argued and submitted in January, 1986. Owens was not argued and submitted until six months later. Yet, Owens was published first and is relied on by the other three cases, and is the only one of the four cases in which all seven judges participated. It is obvious that the court, over almost one year, was attempting to resolve a problem that had been nagging lawyers, trial judges and this court since State v. Lowry, 295 Or 337, 667 P2d 996 (1983). The majority has reinstated that nagging problem, because it

ignores the second step in analysis that *Owens* concluded was necessary.

Perhaps it is a problem, given *Herbert,* that only the Supreme Court can resolve, once again. However, I think that it is implicit in *Herbert* that, even though the court did not rely solely on the uniqueness of the paperfold in deciding whether there was probable cause to seize it, it did so in deciding that the container could be opened without a warrant, citing *Owens.* In other words, a paperfold, like a transparent container, announces its contents; therefore, defendant had no cognizable privacy interest in it, and opening it was not a search. Further, removing the contents was not a "seizure," because there was no "significant interference" with defendant's possessory interest in it. *State v. Owens, supra,* 302 Or at 206.

Given my understanding of the four cases decided November 20, 1986, I concur in the result reached by the majority. I write separately only to deplore its resurrecting the confusion that existed before those cases were decided.