Argued and submitted May 12, decision of the Court of Appeals affirmed, trial court reversed and remanded to that court November 17, 1987

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## KAMALA JEAN OKEKE,
*Respondent on Review.*

(TC DA 280069; CA A35902; SC S33660)

745 P2d 418

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause for petitioner on review. With her on the petition for review were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Raymond F. Thomas, Portland, argued the cause and submitted a response to the petition for review for respondent on review. With him on the response were Michael D. Royce, Douglas A. Swanson, and Eric Charles Lee, Portland.

Marc D. Blackman, Portland, filed an *amicus curiae* brief on behalf of ACLU Foundation of Oregon, Inc. With him on the brief was Ransom, Blackman & Simson, Portland.

Susan F. Mandiberg, Portland, filed an *amicus curiae* brief on behalf of Hooper Memorial Center for Alcoholism Intervention. With her on the brief were George K. Meier and Charles F. Adams of Stoel, Rives, Boley, Fraser & Wyse, Portland.

LINDE, J.

## LINDE, J.

The issue before us is whether evidence found in searching the purse of a person taken involuntarily by police to a detoxification facility may be used to convict the person of a crime.

Defendant was a passenger in a car stopped for a traffic violation. A deputy sheriff detected the odor of alcohol on defendant's breath. When defendant argued with the officer and repeatedly demanded to know when the driver and passengers could leave, the officer took her into custody and delivered her to Hooper Memorial Center for Alcoholism Intervention (Hooper Center), a facility operated by a non-profit corporation under contract with Multnomah County. During the intake procedure, Hooper Center's night supervisor searched defendant's purse and found a small pistol. Defendant was charged with possession of a concealed weapon, ORS 166.240, and convicted after unsuccessfully moving to suppress the evidence obtained by the Hooper Center supervisor.

The district court found that defendant's detention was within the discretion to deal with apparently intoxicated persons given police officers by ORS 426.460(1).[1] The court further found:

"1) Defendant was not under arrest for a crime;

"2) There was no probable cause or reasonable suspicion that defendant committed any crime;

"3) There was no emergency;

"4) That this search could not have been performed by a police officer;

"5) There is insufficient evidence of 'state action' so as to make this search unconstitutional."

---

[1] ORS 426.460(1) provides:

"Any person who is intoxicated or under the influence of controlled substances in a public place may be taken or sent home or to a treatment facility by the police. However, if the person is incapacitated, the health of the person appears to be in immediate danger, or the police have reasonable cause to believe the person is dangerous to self or to any other person, the person shall be taken by the police to an appropriate treatment facility. A person shall be deemed incapacitated when in the opinion of the police officer or director of the treatment facility the person is unable to make a rational decision as to acceptance of assistance."

It therefore denied defendant's motion to suppress evidence of the pistol and any statements made when it was found. The court then found defendant guilty on facts stipulated subject to appeal on the suppression issue.

The Court of Appeals reversed, holding that constitutional restraints applied to the search of defendant's purse at the Hooper Center. *State v. Okeke,* 82 Or App 393, 728 P2d 872 (1986). The court observed:

> "A police officer took defendant into custody and transported her to the Center pursuant to ORS 426.460(1). She was not free to leave, nor did she consent to the search. In detaining, questioning and searching defendant, Center personnel were implementing the legislative directive of ORS 426.460(2) and were exercising authority that the statute gave them. In conducting the search of defendant's purse, they were acting under authority of the state and were, therefore, bringing governmental compulsion to bear on her. They had authority over defendant similar to what the police would have had if the police had searched her purse * * *."

*Id.* at 397, 728 P2d at 874-75 (footnotes omitted). The court then rejected the state's other arguments that the seizure of the pistol by *Hooper Center* personnel and its subsequent use as evidence against her in a criminal prosecution did not deprive her of constitutional rights. We affirm the decision of the Court of Appeals.

ORS 426.460 was first enacted in 1971 when the Legislative Assembly decided to end the longstanding practice of dealing with public drunkenness as a criminal offense, *see, e.g., former* ORS 166.160 (*repealed by* Or Laws 1971, ch 743, § 432), and to treat it instead as a health problem.[2] A central

---

[2] Oregon Laws 1971, chapter 622, reads in part as follows:

"Section 1. The Legislative Assembly finds alcoholism is an illness. The alcoholic is a sick person and should be afforded treatment for his illness.

"* * * * *

"Section 3. No political subdivision in this state shall adopt any local law, ordinance, resolution or regulation that makes any of the following an offense, a violation or the subject of criminal or civil penalties of any kind:

"(a) Public drunkenness * * *.

"(b) Public drinking * * *.

"(c) Drunk and disorderly conduct.

"(d) Vagrancy or other behavior that includes as one of its elements [drinking, being a drunkard, or being found drunk]."

*See also* ORS 430.250.

aim of this legislative reform was to repeal penal laws against public intoxication and to redirect police responsibility toward taking intoxicated persons to their homes or other safe shelter rather than jailing the person in a police "drunk tank." Of course, this change necessitated the provision of such shelters for intoxicated persons who cannot be taken home.

ORS 426.460(1), quoted in footnote 1, directs police ordinarily to take or send a person "who is intoxicated or under the influence of controlled substances in a public place" either home or to a "treatment facility," but it mandates delivery to an "appropriate treatment facility" when the person is incapacitated, in danger, or reasonably believed to be a danger to herself or others. In such a case, the treatment facility must admit the person and, the statute implies, may detain her for 48 hours.

If a city or county maintained a treatment facility to which police officers would deliver intoxicated persons in their custody, the application of constitutional standards could not be doubted. Under the law, counties instead may contract with private nonprofit agencies to provide alcoholism treatment services, ORS 430.370, which must comply with standards and other rules promulgated by the state's Mental Health Division. ORS 430.357. Hooper Center is such a contracting facility for Multnomah County, receiving as much as 90 percent of its income from the county and several other counties and cities. In prosecuting a person who has been detained first by police officers and then in such a facility against her wish, the state cannot escape constitutional requirements merely because the facility is managed by a contracting agency. We therefore turn to those requirements.

Although Okeke was "seized" within the meaning of the constitutional provisions governing searches and seizures, Article I, section 9 of the Oregon Constitution and the federal Fourth Amendment, she was not arrested on suspicion of any crime. Two recent decisions of this court have dealt with searches of bags belonging to persons in comparable circumstances. In *State v. Newman,* 292 Or 216, 637 P2d 143 (1981), *cert den* 457 US 1111 (1982), an officer found an apparently intoxicated young woman alone in a disabled car at 5:30 a.m.

and placed her in a patrol car "on a civil hold."[3] The officer returned to Newman's car and found a woman's purse, which he opened without obtaining Newman's consent. It contained Newman's driver's license and drugs, which led to her prosecution and conviction for possession of a controlled substance. The officer testified that his sole purpose was to find out who the intoxicated woman was. The court held that the warrantless search of Newman's purse nevertheless violated Article I, section 9 and that the evidence so obtained could not be used against her.

Newman was followed in State v. Perry, 298 Or 21, 688 P2d 827 (1984), another case of an intoxicated person detained under ORS 426.460. Perry was observed disabled by alcohol in front of the Roseburg bus station, and in the absence of another treatment facility an officer took him and his luggage to the police station. See ORS 426.460(3). After placing him on a mattress in the station's "detox area," the officer brought Perry's suitcases into the booking room, where he opened the larger suitcase to conduct an "inventory search" in order to forestall potential claims that valuable articles had been taken. The search revealed a bag of marijuana, and after an unsuccessful motion to suppress, Perry was convicted of possession of a controlled substance. This court again held that the items found in such a search could not be used to prosecute the intoxicated person for their possession. The court noted that Perry was detained in a "noncriminal, nonemergency situation," and that the police had neither probable cause nor reasonable suspicion that Perry had committed a crime or that his luggage contained evidence of a crime, contraband, or weapons. 298 Or at 24. The fact that Perry's suitcase was opened after rather than before he was taken to the police station did not change the result reached in Newman. Thus Newman and Perry cover both variables in this case—the place of the search and its asserted purpose—unless a search in a detoxification facility like the Hooper Center is legally different from a search in the police stations which it replaced.

---

[3] The court noted that this term, which also was used to describe Okeke's detention in the present case, is not a term of statutory or case law. Newman, 292 Or at 219, n 2, 637 P2d at 144, n 2. In context, the term connotes that an intoxicated and possibly incapacitated person is held for her own good rather than for purposes of law enforcement.

Hooper Center, in an *amicus* brief in this case, maintains that it should be treated differently because it is not a jail and its intake workers are not police officers but health workers who have no interest in searching for or finding evidence of crimes. Hooper Center also says that because it was not a party to the criminal case, the record does not fully show the facts bearing on its institutional need to protect itself and its clientele by examining the belongings of the intoxicated persons who come under its care.

There are several answers to these concerns. First, this case does not deal with any claim against Hooper Center; it concerns only the use of items taken from a patient as evidence in a criminal prosecution. Nor does it deal with items found in the possession of a patient by personnel of a truly private and independent medical institution not tied to the government to the extent that Hooper Center is. Even as to a public institution, this case does not concern persons who voluntarily appear to seek its services. Those variations can wait until they arise. In this case, Okeke was brought to Hooper Center by sheriff's officers and held without her consent.

Today's decision also does not deal with evidence found in a search upon individualized probable cause. It deals with the prosecutorial use of evidence seized in a routinized, unconsented search of the belongings of a person who has been detained by public officers not on suspicion of criminal conduct but ostensibly for the person's own good. The legislature's purpose in ORS chapters 426 and 430 was to decriminalize intoxication and instead offer its victims protective facilities until its disabling effect has worn off. We understand Hooper Center's concern that its personnel may have to take some steps that can constitute a "search" of an intoxicated person's effects for the person's safety and that of the facility and other inmates. It would, however, contradict the legislative purpose and Article I, section 9 of the Oregon Constitution if an intoxicated person could be prosecuted on evidence seized when the person is taken by police officers to involuntary confinement in an official "treatment facility" rather than to a police station, as in *Perry*. Thus the main point of disagreement between the district court's decision and that of the Court of Appeals was the official character of Hooper Center. Having reached the same result on that issue

as the Court of Appeals, we follow *State v. Newman* and *State v. Perry* to hold that evidence so obtained may not be used to prosecute the intoxicated person.

The decision of the Court of Appeals reversing the judgment of the district court is affirmed and the case is remanded to the district court.