Argued and submitted May 24, 1991, affirmed April 22, reconsideration denied September 23, petition for review allowed November 24, 1992 (314 Or _____)

## STATE OF OREGON,
*Appellant,*

*v.*

## DONALD W. LIPPERT,
*Respondent.*

(90-05-1642-C; CA A65707)

829 P2d 1020

Jas. Adams, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Eric R. Johansen, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

De Muniz, J., specially concurring.

Rossman, J., dissenting.

**BUTTLER, P. J.**

The state appeals from an order granting defendant's motion to suppress the contents of a paperfold removed from defendant's pocket after he had been taken into protective custody for detoxification. ORS 426.460.[1] The paperfold was found to contain cocaine. The question is whether that evidence can be used in a criminal prosecution.

Officer Pfaff was dispatched to a fraternal club, where he encountered defendant sitting on the sidewalk, highly intoxicated; he had twice been removed from the club by the manager. Instead of arresting defendant for criminal trespass and resisting arrest, the officer decided to "give him a break" by taking him to jail on a "civil detox hold." When defendant became belligerent and attempted to get loose, he was handcuffed. En route to the jail, Pfaff observed him trying to reach into his right front pants pocket. At the jail, defendant was removed from the patrol car and placed in a holding cell. As a part of the jail's standard procedure, defendant's pockets were emptied and the contents were recorded. The pocket that defendant had been trying to reach into contained a small paperfold. Pfaff recognized it as a kind of container typically used to carry cocaine. It had "little corners turned in and folded underneath," which distinguished it from other pieces of paper that a person might happen to have folded in a pocket. When Pfaff opened it, he saw a white powdery substance that later tested positive for cocaine.

---

[1] ORS 426.460 provides, in part:

"(1) Any person who is intoxicated or under the influence of controlled substances in a public place may be taken or sent home or to a treatment facility by the police. However, if the person is incapacitated, the health of the person appears to be in immediate danger, or the police have reasonable cause to believe the person is dangerous to self or to any other person, the person shall be taken by the police to an appropriate treatment facility. A person shall be deemed incapacitated when in the opinion of the police officer or director of the treatment facility the person is unable to make a rational decision as to acceptance of assistance.

"* * * * *

"(3) In the absence of any appropriate treatment facility, an intoxicated person or a person under the influence of controlled substances who would otherwise be taken by the police to a treatment facility may be taken to the city or county jail where the person may be held until no longer intoxicated, under the influence of controlled substances or incapacitated."

Defendant was indicted for possession of a controlled substance. He moved to suppress the property seized during the intake process, and the motion was granted. The trial court held that, although Pfaff had grounds to arrest defendant at the scene, his decision to take defendant into custody under the civil detoxification statute precluded the use of the property as evidence in this criminal proceeding. The state appeals, contending that the trial judge's conclusion was based on an overly broad reading of case law. We agree with the trial court and affirm.

Several appellate opinions have examined the admissibility of evidence seized in searches in noncriminal, nonemergency situations when an individual has been involuntarily taken to a detoxification facility pursuant to ORS 426.460. In all of them, the evidence was held to be inadmissible. In *State v. Newman*, 292 Or 216, 637 P2d 143 (1981), *cert den* 457 US 1111 (1982), the defendant had been taken into custody on a "civil hold," because she was found intoxicated in a disabled car at 5:30 a.m. She was a young woman. She refused to provide identification to the officer. The officer found a woman's purse in her car, opened it without her consent and found her driver's license and drugs. His sole purpose in opening her purse was to find out who she was, with the idea that he might want to notify her parents. The court held that the warrantless search of the purse violated Article I, section 9, and that the evidence obtained could not be used against her. The court said that the privacy interest in a purse "is probably greater than in any other property except the clothing worn by a person." 292 Or at 222.

*Newman* was followed by *State v. Perry*, 298 Or 21, 688 P2d 827 (1984), in which the defendant, who had been observed to be disabled by intoxication in front of a bus station, was taken to the police station, because no treatment facility was available. After placing him in the "detox area," an officer brought his suitcases into the booking room and conducted an "inventory search," during which he found a bag of marijuana. The court held that the evidence was not admissible in the criminal prosecution.

In *State v. Okeke*, 304 Or 367, 745 P2d 418 (1987), the intoxicated defendant had been taken to a private

detoxification facility (Hooper Center), which operated under contract with Multnomah County. The night supervisor opened defendant's purse and found a small pistol. On appeal from a conviction for possession of a concealed weapon, the court held that the evidence could not be used in a criminal prosecution. The court said:

> "Today's decision also does not deal with evidence found in a search upon individualized probable cause. It deals with the prosecutorial use of evidence *seized in a routinized*, unconsented *search* of the belongings of a person who has been detained by public officers not on suspicion of criminal conduct but ostensibly for the person's own good. The legislature's purpose in ORS chapters 426 and 430 was to decriminalize intoxication and instead offer its victims protective facilities until its disabling effect has worn off. We understand Hooper Center's concern that its personnel may have to take some steps that can constitute a 'search' of an intoxicated person's effects for the person's safety and that of the facility and other inmates. *It would, however, contradict the legislative purpose and Article I, section 9 of the Oregon Constitution if an intoxicated person could be prosecuted on evidence seized when the person is taken by police officers to involuntary confinement in an official 'treatment facility' rather than to a police station*, as in *Perry*." 304 Or at 373. (Emphasis supplied.)

In *State v. Lawrence*, 58 Or App 423, 648 P2d 1332, *rev den* 293 Or 801 (1982), the intoxicated defendant had been taken into civil custody, taken to the county jail and put through the same booking process as one who had been charged with a crime. Under the jail's procedures, both types of detainees were subjected to a thorough search. During that process, the officer found a clear plastic box containing a segment of a white plastic drinking straw with gray pieces of tape closing each end. He opened the box, took out the straw, shook it and held it up to the light. The gray tape was then removed, and small pink tablets were observed. The officer believed them to be contraband and submitted them for analysis, which confirmed his belief: they contained LSD, a controlled substance. We held that the evidence could not be used in the subsequent criminal prosecution. In *State v. Perry, supra*, the Supreme Court approved our reasoning and result and quoted this language from our opinion in *Lawrence*:

"Given the fact that the purpose of ORS 426.460 is to protect intoxicated persons by keeping them in custody for a limited period (48 hours), rather than treating them as criminals, it would be anomalous to treat them the same as one in full custody arrest for a criminal offense. What is reasonable in the latter case may not be in the former. * * * It is * * * reasonable for the booking officer to inventory (*see* ORS 133.455) the property of the intoxicated person when he will be held in jail, even though not booked for a crime, in order to protect his property and to maintain the security of the detention facility.

"However, the inventory process in noncriminal, nonemergency cases should be less intrusive than that considered reasonable in criminal cases. Once a closed container is taken from the person during inventory of his property and is in the exclusive control of the police, it is unreasonable to open the container and seize its contents without a warrant unless the contents are in plain view and are identified as contraband without the necessity of laboratory analysis." 58 Or App at 430. (Footnote omitted.)

We see no difference between *Lawrence* and this case: In both, the officers observed containers that they reasonably believed contained controlled substances and, in both, they confirmed the contents through chemical analysis, resulting in the defendant's prosecution for possession of those substances. In *Lawrence*, we held that the evidence was inadmissible in the ensuing criminal prosecution. The dissent does not cite one case that holds that evidence so obtained may be used to prosecute the detainee. There are none.[2]

The trial court was correct in suppressing the evidence. The dissent would hold that the evidence is admissible but ignores the warning in *State v. Okeke, supra,* that to permit prosecution of a person under these circumstances would run afoul of both the legislative purpose in enacting the statutes that permit the seizure and detention of intoxicated persons and Article I, section 9.

---

[2] The dissent's reliance on *State v. Westlund*, 302 Or 225, 729 P2d 541 (1986), is almost whimsical. There, the defendant claimed that the police were *required* to take him into civil custody, because he was obviously intoxicated, rather than wait until he entered his car and drove off. The court held, as did we, that the police were not required to do that. The statement quoted in the dissent, 112 Or App at 439, was made in that context.

Affirmed.

**De MUNIZ, J.,** specially concurring.

I agree with the result and most of the reasoning in the lead opinion. However, that opinion suggests that evidence obtained as a result of an inventory conducted during a civil detox hold can *never* be used by the state in a criminal prosecution. I disagree with that proposition.

Defendant was seized when he was taken into civil custody. However, his seizure was without a warrant or probable cause to believe that he had committed a crime. In *State v. Boyanovsky*, 304 Or 131, 743 P2d 711 (1987), the Supreme Court said:

> "[S]ome 'searches' and 'seizures,' conducted for reasons other than the enforcement of laws by means of criminal sanctions, may be authorized by the responsible lawmakers * * * without the customary advance judicial authorization of a warrant.

> "[However, b]efore government officials can embark on a search or seizure for evidence to be used for [criminal prosecution], they must have individualized suspicion of wrongdoing. Further, unless they can show to a court's satisfaction, after the fact, that they did not have time to obtain a warrant, the authorities must have judicial authorization, in the form of a warrant, before the search or seizure." 304 Or at 133.

A civil hold is "ostensibly for the person's own good." *State v. Okeke*, 304 Or 367, 373, 745 P2d 418 (1987). By enacting ORS 426.460, the legislature authorized the police to undertake a "caretaking" function outside the scope of criminal law enforcement.

Under the case law, when the police enter a residence on a "community caretaking" function, crime evidence encountered must be suppressed and cannot support a search warrant, if the entry was not made pursuant to statutory authority. *See State v. Bridewell*, 306 Or 231, 759 P2d 1054 (1988); *State v. Sanchez*, 105 Or App 451, 805 P2d 153 (1991); *State v. Paulson*, 103 Or App 23, 795 P2d 611, *rev allowed* 311 Or 13 (1990); *State v. Bramson*, 94 Or App 374, 765 P2d 824

(1988).[1] In the present case, the police were performing a statutorily authorized caretaking function. I cannot conclude that when an officer, acting under statutory authority, lawfully encounters evidence that gives rise to probable cause, the state is invariably barred from using that evidence in a criminal prosecution.

In *State v. Lawrence*, 58 Or App 423, 431, 648 P2d 1332, *rev den* 293 Or 801 (1982), we said that it is reasonable for an officer to inventory the personal property of a person under a civil detox hold. The inventory protects the property and helps to maintain the security of the detention facility. *See* ORS 133.455. In the light of the "caretaking" purpose of ORS 426.460, we said:

> "Given the fact that the purpose of ORS 426.460 is to protect intoxicated persons by keeping them in custody for a limited period (48 hours), rather than treating them as criminals, it would be anomalous to treat them the same as one in full custody arrest for a criminal offense. * * *

> "[The] inventory process in noncriminal, nonemergency cases should be less intrusive than that considered reasonable in criminal cases. Once a closed container is taken from the person during inventory of his property and is in the exclusive control of the police, it is unreasonable to open the container and seize its contents without a warrant unless the contents are in plain view and are identified as contraband without the necessity of laboratory analysis."

Defendant concedes that the paperfold was discovered during a lawful inventory. The paperfold is a closed

---

[1] In 1991, the legislature enacted Or Laws 1991, ch 959, § 1, codified as ORS 133.033. It provides, in part:

"(1) Except as otherwise expressly prohibited by law, any peace officer of this state, as defined in ORS 133.005, is authorized to perform community caretaking functions.

"(2) As used in this section, 'community caretaking function' means any lawful acts that are inherent in the duty of the peace officer to serve and protect the public. 'Community caretaking functions' includes, but is not limited to:

"(a) The right to enter or remain upon the premises of another if it reasonably appears to be necessary to:

"(A) Prevent serious harm to any person or property;

"(B) Render aid to injured or ill persons; or

"(C) Locate missing persons."

I express no opinion on how that statute affects *Bridewell* and its progeny.

container that "announces its contents" and thus gives rise to probable cause to believe that it contains a controlled substance. *State v. Shelton*, 105 Or App 570, 573, 805 P2d 698, *rev den* 311 Or 427 (1991); *State v. McCrory*, 84 Or App 390, 397, 734 P2d 359 (1987) (Buttler, J., specially concurring). However, its contents were not literally in plain view; neither could they be confirmed as contraband without laboratory testing. The requirement that a civil detox inventory be less intrusive than a "full custody arrest" inventory made it unreasonable for the police to open the paperfold without first obtaining a warrant. The warrantless opening of the paperfold rendered its contents inadmissible.

The cases cited in the lead opinion do not address the admissibility of evidence encountered during a civil detox hold when the police obtain a warrant after encountering evidence during an inventory. In this case, the police could have obtained a warrant supported by probable cause. *State v. Boyanovsky, supra,* and *State v. Bridewell, supra,* and its progeny indicate that, had the police taken that reasonable step, the cocaine in the paperfold would have been admissible.

**ROSSMAN, J.,** dissenting.

The officer in this case brought defendant to jail, inventoried the objects in his pockets, seized one object that announced its contents and subjected those contents to confirmatory chemical testing. Because I believe that each step in that process was lawful and that lawfully obtained evidence may be used in a subsequent prosecution, I respectfully dissent.

It is undisputed that Pfaff was authorized to transport defendant to jail for detoxification. ORS 426.460(3). It is also undisputed that, when an intoxicated individual is brought to jail for that purpose, the booking officer may conduct an inventory of the individual's property. *State v. Perry*, 298 Or 21, 688 P2d 827 (1984).

Although there is disagreement about what action Pfaff was allowed to take *after* the paperfold came into his possession, the other authors of today's tripartite opinion appear to agree that the inventory itself was properly conducted. Defendant does not challenge the legality of the procedure that was used, and I, too, am satisfied that the act

of emptying defendant's pockets was well within the permissible scope of an inventory. Unlike the other cases we have addressed, no wallet, purse, box, suitcase or other closed container was opened in order to find the contraband.

The only question, then, is what Pfaff was allowed to do with the paperfold. The lead opinion would have him inventory "one paperfold" and would disallow any subsequent prosecution for possession of a controlled substance. The special concurrence would have Pfaff secure a search warrant and would then allow defendant to be prosecuted. I would have Pfaff be entitled to open the paperfold and test its contents.

We have held that the lawful discovery of a paperfold gives an officer probable cause to believe that a person is in possession of a controlled substance. *State v. Shelton*, 105 Or App 570, 573, 805 P2d 698, *rev den* 311 Or 427 (1991). Simply put, an officer's belief that a paperfold contains an illegal drug is reasonable because of the unique nature of the object. At this point in history, due to its use as a method for carrying illegal drugs, "a paperfold, like a transparent container, announces its contents." *State v. McCrory*, 84 Or App 390, 397, 734 P2d 359 (1987)(Buttler, J., specially concurring). The Supreme Court has held that, when a container announces its contents, no warrant is required before an officer may open it and seize its contents. *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986).

*Owens* also held that chemically testing the contents of such a container to determine whether it is a controlled substance "is neither a 'search' nor a 'seizure' under Article I, section 9." 302 Or at 206. Accordingly, "[a] test for such a limited purpose does not infringe any privacy interest protected by the Oregon Constitution." 302 Or at 206. Whether the scenario in this case is characterized as plain view of contraband from a lawful vantage point or probable cause justifying arrest and search incident to that arrest or lawful discovery of a container that announced its contents, the result is the same: The seizure and testing of the paperfold was constitutional.

The only remaining issue, then, is whether the results of the chemical test were admissible in defendant's

prosecution. In other cases involving civil detoxification custody, seized evidence has been held inadmissible because the underlying searches were unreasonably intrusive and, therefore, violated Article I, section 9. Here, no such violation occurred. When the Supreme Court concluded that, in the context of civil detoxification detentions, the "test of each step in the police procedure is *reasonableness*," *State v. Newman*, 292 Or 216, 224, 637 P2d 143 (1981), *cert den* 457 US 1111 (1982) (emphasis supplied), that presumably meant that, when each step of the police procedure is reasonable, the evidence will be admissible. If the Court did not intend that result, it would have fashioned a *per se* rule requiring warrants in every case or automatically excluding evidence, *regardless* of the reasonableness of the procedure.

Furthermore, in *State v. Westlund*, 302 Or 225, 230, 729 P2d 541 (1986), the Supreme Court found "no indication that the legislature intended [the civil detoxification statute] to immunize intoxicated persons from *criminal prosecution for otherwise criminal conduct*."[1] (Emphasis supplied.) Defendant's intoxication was not a crime, but his possession of cocaine was. Prosecuting him for that possession would not be contrary to either the legislature's intent or the constitution.

It bears repeating that the touchstone in civil detoxification cases is "reasonableness." Every detoxification inventory case on which we have previously written has involved a closed container and some *unreasonable* action on the part of the officer.[2] This case is different. The officer was in a place where he had a right to be, conducting an inventory that he had a right to conduct and, concededly, performing that inventory in a lawful manner. During the process, he

---

[1] Reliance on *State v. Westlund* is far from "whimsical." 112 Or App at 434 n 2. In *Westlund*, the Oregon Supreme Court interpreted the statute that is at issue in this case. That interpretation was neither limited to nor dependent on the facts of that case.

[2] The lead opinion takes the approach that, because no case has heretofore admitted evidence that was seized in a civil detoxification setting, we cannot allow it to happen in this case. That ignores the fact that, in each case that addresses the detention of intoxicated persons under ORS 426.460, the evidence was held inadmissible only because *the underlying search was unreasonably intrusive* and, therefore, violated Article I, section 9. The lead opinion's approach would avoid our first responsibility to apply the law to the facts of the case. Instead, it would have us reach the same result every time, regardless of different facts.

saw, in plain view, evidence of a crime. I believe that he had a responsibility to seize that evidence and to make whatever arrest was mandated by the circumstances. The same would be true for an officer who came across contraband while on his way home from work or while sitting in church. Those basic rules do not change simply because this officer happened to be in a detoxification center.

I remain committed to the view that when an officer follows the book, he should be entitled to act on what he sees.