Argued and submitted May 3, decision of the Court of Appeals reversed; order of the circuit court reversed and case remanded to the circuit court for further proceedings August 19, 1993

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## DONALD W. LIPPERT,
*Respondent on Review.*

(CC 90-05-1642-C; CA A65707; SC S39473)

856 P2d 634

Jas. Adams, Assistant Attorney General, Salem, argued the cause and filed the petition for petitioner on review. With him on the petition were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Eric R. Johansen, Deputy Public Defender, Salem, argued the cause for respondent on review.

GILLETTE, J.

## GILLETTE, J.

In this criminal case, the trial court granted defendant's pretrial motion to suppress the contents of a paperfold found in defendant's pocket after he was taken into civil custody for detoxification. The Court of Appeals affirmed the suppression order. *State v. Lippert*, 112 Or App 429, 829 P2d 1020 (1992). We reverse and remand for further proceedings.

The relevant facts are undisputed. On February 24, 1990, the manager of the Elks Club in Burns called the police to complain about a person at the club. A police officer arrived and found defendant "highly intoxicated." Rather than arrest defendant for criminal trespass or for resisting arrest — which, the trial court noted, would have been a proper response to defendant's actions — the officer decided to "give [defendant] a break" and take him into civil custody for detoxification, as permitted by ORS 426.460, set out *infra*. When defendant became belligerent and attempted to break free, the officer handcuffed him.

Because Harney County did not have a treatment facility, the officer transported defendant to the county jail. ORS 426.460(3).[1] At the jail, the officer and the jailer conducted a routine inventory of defendant's belongings.[2] From defendant's right front pocket, the jailer removed a paperfold measuring approximately one and one-half inches by three-quarters of an inch, with its corners "turned in, and * * * folded underneath." The officer recognized the paperfold as "the type commonly used to package cocaine or crank."[3] The

---

[1] ORS 426.460(3) provides:

"In the absence of any appropriate treatment facility, an intoxicated person or a person under the influence of controlled substances who would otherwise be taken by the police to a treatment facility may be taken to the city or county jail where the person may be held until no longer intoxicated, under the influence of controlled substances or incapacitated."

[2] Evidence offered at the hearing established that the inventory was the kind of properly authorized, routinized, noninvestigatory process that this court held to be constitutionally permissible in *State v. Atkinson*, 298 Or 1, 688 P2d 832 (1984). Defendant does not claim that the inventory in this case violated the rule in *Atkinson*.

[3] The officer testified that he had received training in the identification of controlled substances, that he had practical experience in the field seeing controlled substances, and that he had seen this type of paperfold before. (In fact, he previously had taken a similar paperfold, with similar contents, from this same defendant.)

officer opened the paperfold and observed inside "[a] white powdery substance resembling cocaine." The substance was later determined by chemical testing to be cocaine.

Defendant was indicted for possession of a controlled substance. He moved to suppress the paperfold and its contents. He did not (and does not) challenge either the permissibility of the inventory procedures or the existence of probable cause to seize the paperfold and to analyze its contents. He simply argued that evidence obtained during a detoxification procedure could not be used in a criminal prosecution. The trial court granted the motion to suppress, concluding that, under Oregon case law, "[t]he State cannot use evidence seized in an unconsented search of a person's belongings who has been detained on a noncriminal non-emergency detoxification hold."[4]

The state appealed the suppression order, and the Court of Appeals affirmed. The lead opinion found the present case indistinguishable from an earlier Court of Appeals case, *State v. Lawrence*, 58 Or App 423, 648 P2d 1332, *rev den* 293 Or 801 (1982):

> "In both, the officers observed containers that they reasonably believed contained controlled substances and, in both, they confirmed the contents through chemical analysis, resulting in the defendant's prosecution for possession of those substances. In *Lawrence*, we held that the evidence was inadmissible in the ensuing criminal prosecution. The dissent does not cite one case that holds that evidence so obtained may be used to prosecute the detainee. There are none."

*State v. Lippert, supra*, 112 Or App at 434 (Buttler, P. J.) (footnote omitted).

A concurring judge disagreed only with the suggestion in the lead opinion "that evidence obtained as a result of an inventory conducted during a civil detox hold can *never* be used by the state in a criminal prosecution." *State v. Lippert, supra*, 112 Or App at 435 (De Muniz, J., specially concurring)

---

[4] It is clear from the trial court's order in this case that the court found the inventory of defendant's trousers pocket, the subsequent seizure of the paperfold, and the analysis of the paperfold's contents all to have been constitutionally permissible. The trial court's order, like defendant's argument, was based on legal, not factual, grounds.

(emphasis in original). In the opinion of the concurring judge, the evidence would have been admissible if the police had obtained a warrant to open the paperfold. *Id.* at 437.

A dissenting judge would have held that, despite the civil detoxification context and the lack of a warrant, the evidence obtained in this case was admissible. *State v. Lippert, supra,* 112 Or App at 437-40 (Rossman, J., dissenting). According to the dissenting judge, no warrant was necessary because, "due to its use as a method for carrying illegal drugs, 'a paperfold, like a transparent container, announces its contents.' " *Id.* at 438 (quoting *State v. McCrory,* 84 Or App 390, 397, 734 P2d 359 (1987) (Buttler, J., specially concurring)). The dissenting judge also concluded that the civil detoxification context did not bar use of the evidence, because the officer acted reasonably and "the 'test of each step in the police procedure is reasonableness.' " *Id.* at 439 (quoting *State v. Newman,* 292 Or 216, 224, 637 P2d 143 (1981), *cert den* 457 US 1111 (1982)) (emphasis omitted).

We emphasize at the outset how limited the issue in this case is. Defendant does not deny that he was intoxicated or that the officer was justified in placing him in a "detox hold." Neither does he deny (1) that the Harney County Jail was an appropriate place to house him until he became sober; (2) that there were procedures in place at the jail that were established by a politically accountable lawmaker providing for the noncriminal, routinized search of a person's belongings to ensure that contraband or weapons would not be introduced into the secure portion of that facility; (3) that the search of defendant in this case complied with those procedures; (4) that the paperfold containing the cocaine was found during that search; (5) that the officer had the background and experience to permit him to identify contraband; (6) that, because of his earlier encounter with this same defendant, the paperfold taken from defendant in this case announced its contents to this arresting officer; nor (7) that the officer both subjectively and objectively believed — and had probable cause to believe — that the paperfold contained contraband. Defendant's sole claim is that, the foregoing notwithstanding, evidence of criminal acts properly found during an inventory search in connection with a "detox hold"

cannot be used in an ensuing criminal prosecution. Defendant is mistaken.

ORS 426.460 provides the statutory authority for the nonemergency "civil detox hold" in this case. That statute provides, in part:

"(1)   Any person who is intoxicated or under the influence of controlled substances in a public place may be taken or sent home or to a treatment facility by the police. * * *

"* * * * *

"(3)   In the absence of any appropriate treatment facility, an intoxicated person or a person under the influence of controlled substances who would otherwise be taken by the police to a treatment facility may be taken to the city or county jail where the person may be held until no longer intoxicated, under the influence of controlled substances or incapacitated."

On three occasions, this court has considered the validity of a search conducted during a nonemergency civil detoxification hold authorized by ORS 426.460. The first occasion was in *State v. Newman, supra.* In *Newman,* a police officer took the defendant into civil custody for detoxification, then searched her purse for identification before transporting her to a treatment or holding facility. During the search, the officer discovered contraband. The defendant later challenged the validity of the search in a motion to suppress.

In judging the validity of the search, this court stated that "[t]his case boils down to a question of reasonableness." *State v. Newman, supra,* 292 Or at 221; *see also id.* at 224 ("The test of each step in the police procedure is reasonableness."). As authority for that proposition, the court cited *State v. Tourtillott,* 289 Or 845, 618 P2d 423 (1980), *cert den* 451 US 972 (1981), a case that involved the reasonableness of a police roadblock under Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the Constitution of the United States. Thus, in *Newman,* this court judged the validity of the search under the standard of "reasonableness" required by the state and federal constitutions.[5] The

[5] Article I, section 9, of the Oregon Constitution, provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." The Fourth Amendment to the

court concluded that the search of the defendant's purse was unreasonable, because searching the purse was not necessary to carry out the officer's obligation to safeguard either the person to be detoxified or others. *State v. Newman, supra*, 292 Or at 222.

Three years later, in *State v. Perry*, 298 Or 21, 688 P2d 827 (1984), the court once again confronted the validity of a search during a civil detoxification hold. In *Perry*, after taking the defendant to the police station for detoxification, the police conducted an inventory of the defendant's luggage, ostensibly to protect any valuables contained within. Agreeing with the reasoning and result of *State v. Lawrence, supra*, a similar inventory case from the Court of Appeals, this court held that it was unreasonable for the police to open a closed container seized during an inventory of an intoxicated person held for detoxification. 298 Or at 26-27. Quoting from *Lawrence*, this court stated:

> " 'Once a closed container is taken from the person during inventory of his property and is in the exclusive control of the police, it is unreasonable to open the container and seize its contents without a warrant unless the contents are in plain view and are identified as contraband without the necessity of laboratory analysis.' "

*Id.* at 27 (quoting *State v. Lawrence, supra*, 58 Or App at 431).

In *State v. Okeke*, 304 Or 367, 745 P2d 418 (1987), this court for the third time confronted the validity of a search during a civil detoxification hold. In *Okeke*, the personnel of a privately owned treatment facility searched the defendant's purse after a deputy sheriff brought her to the facility for detoxification. Under *Newman* and *Perry*, such a search would have been impermissible if it had been conducted by police officers at a jail. The central issue in *Okeke* was whether the "constitutional restraints" of Article I, section 9, applied to a search conducted by the personnel of a treatment facility, rather than by the police. This court concluded that, under the circumstances, there was no legal difference between a

---

Constitution of the United States provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The Fourth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 US 643, 81 S Ct 1684, 6 L Ed 2d 1081 (1961).

search by the personnel of a treatment facility and a search by police at a police station. 304 Or at 372-73. The court then stated, simply, "we follow *State v. Newman* and *State v. Perry* to hold that evidence so obtained may not be used to prosecute the intoxicated person." *Id.* at 374. Thus, the court in *Okeke* ruled implicitly that the search of the defendant's purse was impermissible as a constitutional matter.

Defendant relies on language from *Okeke* for the proposition that, "[b]ecause [defendant] was taken into custody for detoxification, evidence obtained from him cannot be used in a prosecution against him." *Okeke,* however, never was intended to stand for so broad a proposition. Beginning with *Newman,* and continuing through *Perry* and *Okeke,* this court has held that Article I, section 9, of the Oregon Constitution, is violated when officers conduct a search of closed, opaque containers (purses and suitcases) that do not announce their contents and that are not going to be placed with the intoxicated person into the secured portion of the detoxification facility. The evidence in each case was suppressed not simply because the search that uncovered the evidence occurred during a civil detoxification hold, but because the search exceeded the scope required by the peculiar circumstances there involved.

Neither does ORS 426.460 itself require the suppression of evidence discovered in taking an inventory of the effects of a person taken into civil custody under the authority of that statute. It is true, as stated in *Okeke,* that "[t]he legislature's purpose in [enacting] ORS [426.460] was to decriminalize intoxication and instead offer its victims protective facilities until its disabling effect has worn off." *State v. Okeke, supra,* 304 Or at 373. It is equally true, however, that, as earlier stated by this court in *State v. Westlund,* 302 Or 225, 230, 729 P2d 541 (1986), "[t]he purpose [of ORS 426.640] is unrelated to protecting persons from illegal searches or seizures."

In *Westlund,* this court examined the legislative history of ORS 426.460 and concluded: "[W]e find no indication that the legislature intended [by enacting ORS 426.460] to immunize intoxicated persons from criminal prosecution for otherwise criminal conduct." 302 Or at 230. This court's construction of ORS 426.460 in *Westlund* effectively became

a part of the statute. *See, e.g., State v. Clevenger*, 297 Or 234, 244, 683 P2d 1360 (1984) (this court's construction of a statute becomes a part of the statute). By asking this court to read *Okeke* as establishing a *per se* rule, defendant, in effect, is asking this court to do what it has determined that the legislature did not intend — immunize intoxicated persons from prosecution for other crimes by suppressing any and all evidence that is discovered on those persons in otherwise legitimate inventories. The legislature did not intend ORS 426.460 to grant the immunity that defendant claims.

In summary, we hold that neither the statute that authorizes civil detoxification procedures nor the decisions of this court that apply constitutional considerations to those civil detoxification procedures justify the suppression of evidence that was removed from defendant's pocket in this case.[6] A politically accountable lawmaker explicitly authorized the inventory of defendant's person after he lawfully was taken into custody for detoxification. Removal of the paperfold from defendant's right front pocket was within the scope of the authorized inventory. The police were entitled to seize that inadvertently discovered evidence of a crime, which was in plain view, without a warrant and to use the evidence at defendant's criminal trial. The trial court's contrary ruling, and the decision of the Court of Appeals that upheld that ruling, were both in error.

The decision of the Court of Appeals is reversed. The order of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.

---

[6] The result would be different if the item searched were not a pocket but instead were something that the person to be detoxified was not going to take into the secure facility. *See, e.g., State v. Okeke*, 304 Or 367, 745 P2d 418 (1987) (purse); *State v. Perry*, 298 Or 21, 688 P2d 827 (1984) (suitcase); *State v. Newman*, 292 Or 216, 637 P2d 143 (1981), *cert den* 457 US 1111 (1982) (purse).