Argued and submitted September 25, 1990, reversed and remanded for new trial February 6, reconsideration denied August 14, petition for review pending 1991

STATE OF OREGON,
*Respondent,*

*v.*

ANTHONY DeJESUS SANCHEZ,
*Appellant.*

(C87-11-36780; CA A50944)

805 P2d 153

Irene B. Taylor, Salem, argued the cause for appellant.

With her on the brief was Sally L. Avera, Public Defender, Salem.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

Riggs, J., dissenting.

## WARREN, P. J.

Defendant appeals his convictions for manufacture, delivery and possession of a controlled substance. ORS 475.992. We reverse.

Detective Bellah, a Portland police officer assigned to the Clandestine Labs Unit, received an anonymous telephone call from a person who told him that, while walking by a house, he smelled a strong odor that he thought could be ether. Bellah went to the area to investigate. There was a strong and distinctive smell of ether coming from the house. Bellah knew that ether frequently is used in the manufacture of methamphetamine and that it also has legitimate uses. He did not smell any other odors usually associated with methamphetamine production. He did not believe that he had probable cause to enter the house. Bellah called the fire department, because he knew that ether is explosive. When the fire fighters arrived, they entered the house, because they thought that there was a chance of an explosion and they were concerned about safety. Bellah accompanied them when they entered, because, on the basis of his training and experience, he knew that ether might indicate an illegal drug lab and that the people who have illegal labs can be dangerous. Inside the house, he saw various items and materials that he associated with a drug lab. He used the information gathered from inside the house to get a search warrant, and he seized the evidence.

Defendant first challenges the trial court's denial of his motion to suppress evidence obtained pursuant to the warrantless search of the house. He argues that the evidence must be suppressed under the Supreme Court's ruling in *State v. Bridewell,* 306 Or 231, 239, 759 P2d 1054 (1988). He contends that the fire department and Bellah entered the house in a "community caretaking" function and that they did not have statutory or other authority for the entry. Accordingly, he argues that, under *Bridewell,* the evidence obtained as a result of that intrusion must be suppressed.[1] Alternatively, he argues that there was no emergency to justify a warrantless

---

[1] Inadmissible evidence is not available to support an application for a search warrant. *State v. Donahue,* 93 Or App 341, 345, 762 P2d 1022 (1988), *rev den* 307 Or 303 (1989).

entry under the emergency aid doctrine discussed in *Bridewell,* 306 Or at 236.[2]

The state responds, first, that the fire department had authority, under both a state statute and a city ordinance, to enter the house to alleviate the danger of explosion created by the presence of ether. Therefore, it argues, *Bridewell* does not require suppression of the evidence. It also argues that there was an emergency that justified the fire fighters' entrance under the emergency aid doctrine.

■ ■ The state has the burden of showing that a warrantless search was justified. *See State v. Davis,* 295 Or 227, 666 P2d 802 (1983). In *State v. Bridewell, supra,* the court said:

> "In situations implicating criminal law enforcement functions, law enforcement officers may enter without a warrant to render emergency assistance under the emergency/exigent circumstances exception to the warrant requirement. In situations not implicating criminal law enforcement functions and not justified by the emergency/exigent circumstances exception, law enforcement officers, like private individuals, also may enter to render emergency assistance. In th[at] situation, however, incriminating evidence arising from the intrusion by law enforcement officers must be suppressed." 306 Or at 239. (Footnotes omitted.)

Both parties focus on the fire department's authority to enter the house. The answer to whether the *fire fighters* had authority to enter the house, however, says nothing about *Bellah's* authority to accompany them. The information used to obtain the search warrant was not provided by the fire fighters; it was information obtained through Bellah's warrantless entry into the house. Under the circumstances, as in *State v. Paulson,* 103 Or App 23, 795 P2d 611, *rev allowed* 311 Or 13 (1990), it is the police officer's authority to enter, not the fire department's, that is relevant.

The trial court found, and there is evidence, that Bellah called the fire department because "he was not authorized to make that entry" and "because he believed, or was apprehensive, that there was a danger of an explosion." The

---

[2] Defendant also argues that the fire fighters lacked probable cause to enter the house. The state conceded at trial that there was no probable cause, and that issue is not before us.

court further found that "[h]is reasons for going in with the Fire Department are based on his training and experience that ether can mean an illegal lab, and the people who do that type of thing are people whose conduct can be dangerous."

We need not decide whether Bellah's reason for entering the house, protection of the fire fighters, was in the context of a criminal investigation or in a noncriminal context because, under either theory, the state has not established justification for Bellah's warrantless entry. Assuming that the entry was pursuant to Bellah's "community caretaking function,"

> "the state cannot point to a statute or ordinance authorizing entries by [police officers] in response to citizen concern about the safety and well-being of neighbors." *State v. Bridewell, supra,* 306 Or at 239.

*Accord State v. Paulson, supra.* Accordingly, the evidence should have been suppressed. *State v. Bramson,* 94 Or App 374, 378, 765 P2d 824 (1988).

■ Bellah's warrantless entry cannot be justified by the emergency aid doctrine, under which there must be a true emergency and at least a reasonable belief or suspicion of criminal activity. *State v. Bramson, supra,* 94 Or App at 377. Even if there were a true emergency caused by the ether which the parties dispute, the state has not established that there was a reasonable belief or suspicion of criminal activity. Bellah testified that ether is known to be used in drug labs but has other, legitimate, uses as well. The existence of a possible emergency situation, without more, is not enough to justify a warrantless search under the emergency aid doctrine. *State v. Bridewell, supra,* 306 Or at 237.[3]

Because of our disposition of defendant's first assignment of error, we need not address his other assignments.

Reversed and remanded for a new trial.

---

[3] The state argues in a footnote that,

"because the Fire Bureau properly entered the house, the evidence would have been discovered regardless of what Officer Bellah did and defendant has not argued otherwise."

The state has not pointed to any evidence that would meet its burden of showing that discovery of the evidence was inevitable. *See State v. Miller,* 300 Or 203, 226, 709 P2d 225 (1985), *cert den* 475 US 1141 (1986).

**RIGGS, J.,** dissenting.

The majority reverses, because it holds that the entry into the residence cannot be sustained under either the emergency aid doctrine or under any exception to the "community caretaking doctrine" described in *State v. Bridewell,* 306 Or 231, 759 P2d 1054 (1988). The majority is wrong.

The majority, among other things, cites *Bridewell* for the proposition that there is no "statute or ordinance authorizing entries by [police officers] in response to citizen concern about the safety and well-being of neighbors." 105 Or App at 455. Unlike in *Bridewell,* there *was* statutory authority here. ORS 476.070 provides that fire marshals and their assistants may, "[f]or just cause and for the purpose of examination, enter, at all reasonable hours, in and upon all buildings and premises within their jurisdiction." Similarly, the Portland City Code provides a separate source of authority that authorizes fire fighters to do exactly what they did here. Portland City Code § 31.20.050.

The facts in this case clearly established "just cause" to enter. The trial court specifically found that "the evidence I've had presented to me, the evidence in the record, is that ether is dangerous." The trial court also concluded that the danger "would lead a prudent and reasonable officer to see a need for immediate action to protect life and property."

Not only do the statute and the ordinance authorize what happened here, defendant does not argue that Officer Bellah's presence during the entry with the fire fighters affects the question of whether the Fire Bureau had authority to enter the house. The majority focuses, incorrectly, on Bellah's entry into the house and his discovery of the readily visible drugs. Indeed, because the fire fighters properly entered the house, the evidence presumably would have been discovered, regardless of what Bellah himself did. Defendant has not argued otherwise.[1]

---

[1] The photographs offered in evidence by the state amply demonstrate the readily visible nature of the drugs and paraphernalia discovered. Bellah testified:

"We got inside through the upstairs window. I just looked at the rooms for people. I saw some glassware, boiling flasks, setting around. I, I followed the firemen more or less. They didn't pick up anything. * * *.

"We went downstairs. While we were down there, again, I was looking for people. I saw out of the corner of my eye the firemen locate some chemicals. * * * I saw some glassware that indicated to me that there was a lab there. I saw some [bowls of] white powder drying that appeared to be methamphetamine. We saw other glassware laying on the floor."

*State v. Bridewell, supra,* 306 Or at 240 n 6, contains examples of statutory authority that would justify entrance of a residence without consent and without a warrant. It is not intended to list *all* of the possible sources of authority a fire fighter might use to do what was done here. In fact, the list in the footnote does not include the statutes or ordinances that give authority in this case, but that does not mean that *Bridewell* prohibits what was done here, contrary to defendant's argument.

This case does not present the kind of "community caretaking" circumstance that was the subject matter of the rule in *Bridewell.* The majority is wrong in thinking that it does.

I dissent.