Argued and submitted July 11, 1991, affirmed January 22, reconsideration denied
April 1, petition for review denied April 28, 1992 (313 Or 210)

# STATE OF OREGON,
*Respondent,*

*v.*

# BJORN NMN CHAMBLESS,
*Appellant.*

## (10-90-04589; CA A67577)

824 P2d 1183

Shaun S. McCrea and McCrea, P.C., Eugene, filed the brief for appellant.

Cynthia A. Forbes, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant appeals from convictions for unlawful manufacture of a controlled substance, unlawful possession of a controlled substance and criminal mischief in the second degree. ORS 475.992(1); ORS 475.992(4); ORS 164.354. He claims that the trial court erroneously admitted evidence of psilocybin mushrooms found in his home, because (1) it improperly denied his motion to controvert the affidavit supporting the search warrant, (2) the warrant was not supported by probable cause and (3) the search exceeded the scope of the warrant. We affirm.

The facts relating to defendant's first two arguments are taken from the affidavit supporting the warrant and the police incident report, which was incorporated by reference into the affidavit. The facts relating to his third argument are taken from testimony at the hearing on his motion to suppress. Dugas parked his car at 10:45 p.m. When he returned at 7:45 the next morning, he discovered that his car had rolled back into another parked car and that someone had damaged his car by kicking it. He found that Rodgers had left a note on its windshield advising him that the other car was hers and requesting that he contact her.

Officer Rodenhuis investigated the incident. She examined the footprints on Dugas' car and concluded that they were from a "court type shoe." She surmised that it "was probably a men's [sic] shoe" because of its size. Rodenhuis called the number on the note and obtained Rodgers' phone number from the person with whom she spoke. She called Rodgers, who told her that she and defendant, her boyfriend, had gone to a movie. When they returned to her car, they found Dugas' car wedged against it. She said that she was mad, because she thought that the other driver had backed into her car and left on foot. Rodenhuis asked if defendant also got mad, and Rodgers said, "He doesn't get mad." Rodenhuis asked if defendant had kicked Dugas' car. Rodgers said that she had not seen him kick the car and was not aware that he had damaged the car. Rodenhuis told Rodgers that she wanted to meet with her to discuss the incident.

Rodenhuis then attempted to call defendant, but his line was busy. She attempted to call Rodgers again, but her line was also busy. Half an hour later, Rodenhuis went to Rodgers' apartment. Rodgers acknowledged speaking to defendant about the investigation immediately after her conversation with Rodenhuis. She told the officer that she had called defendant, because she was scared and concerned that the officer might have tapped her telephone line. When Rodenhuis asked what defendant had said about the damage to Dugas' car, Rodgers said, "I don't recall. You could hypnotize me and I wouldn't remember." Rodenhuis again asked if defendant had damaged Dugas' car and Rodgers replied, "Not that I'm aware of. I have no proof he did it. I didn't hear headlights or taillights breaking." Rodgers also said that she would not lie for defendant and that, during their phone conversation, "He told me not to admit to anything."

Rodenhuis visited defendant at his home. She asked if she could see his shoes to see if they matched the footprints on Dugas' car. Defendant showed her several pairs, none of which matched the footprints on the car. He refused to permit her to look for additional shoes.

Rodenhuis applied for a search warrant. She attached her report to the affidavit supporting the search warrant. She incorporated the report by reference in the affidavit and obtained a warrant to search defendant's home for a shoe matching the pattern of the footprints on Dugas' car. Her search uncovered a "Converse" shoe. It also uncovered growing marijuana and psilocybin mushrooms.

■     In his motion to controvert the affidavit, defendant argued that the affidavit did not place him at the scene of the incident. Defendant is correct, insofar as the affidavit itself goes. However, the affidavit incorporated Rodenhuis' report by reference, and the report placed him at the scene. By incorporating her report into the affidavit, Rodenhuis swore to its veracity when she swore to the veracity of her affidavit. The report became part of the affidavit, and the magistrate could reasonably rely on it to conclude that defendant was at the scene of the incident. The court properly denied defendant's motion to controvert.

■ ■　Defendant next argues that the warrant was not supported by probable cause. In reviewing the sufficiency of an affidavit, the court examines the facts contained in the affidavit and considers the reasonable inferences that can be drawn from those facts. *State v. Brust*, 94 Or App 416, 419, 765 P2d 1246 (1988). Before issuing a warrant, a magistrate must find that "there is probable cause to believe that the search will discover things specified in the application." ORS 133.555(2). The Supreme Court has said:

> "The probable cause requirement means that the facts upon which the warrant is premised must lead a reasonable person to believe that seizable things will probably be found in the location to be searched." *State v. Anspach*, 298 Or 375, 380, 692 P2d 602 (1984).

"Probably" means "more likely than not."[1] The issue, then, is whether the facts contained in Rodenhuis' affidavit and report would lead a reasonable person to believe that the shoe that damaged Dugas' car would, more likely than not, be found in defendant's home.

■　Rodgers repeatedly told officer Rodenhuis that she had no knowledge that defendant had damaged Dugas' car. She spoke with defendant about the investigation. She told the officer that she would not lie for defendant and said, "You could hypnotize me and I wouldn't remember." The magistrate could have concluded that this statement, made only half an hour after her conversation with defendant about the investigation, suggested that Rodgers was not being candid with the officer. The magistrate could have reasonably concluded that she was withholding information pertinent to the investigation — information linking defendant to the damage to Dugas' car. The affidavit and report were sufficient to establish probable cause to believe that defendant had kicked Dugas' car. ORS 131.005(11). A reasonable person would, therefore, believe that the shoe that matched his print on Dugas' car would probably be found in defendant's home. *See, e.g., State v. Schroeder*, 62 Or App 331, 336, 661 P2d 111, *rev den* 295 Or 161 (1983). The warrant was valid.

---

[1] *Anspach* indicates that we were wrong when we said that "probable cause 'does not mean more likely than not, it means only a well-warranted suspicion.' " 298 Or at 380. *See State v. Schroeder*, 62 Or App 331, 335, 661 P2d 111, *rev den* 295 Or 161 (1983); *State v. Willis*, 24 Or App 409, 412, 545 P2d 1392, *rev den* (1976).

■　　Finally, we address defendant's claim that the search exceeded the scope of the warrant. ORS 133.585 provides, in part:

> "The scope of search shall be only such as is authorized by the warrant and is reasonably necessary to discover the persons or things specified therein. Upon discovery of the persons or things so specified, the officer shall take possession or custody of them and search no further under authority of the warrant."

Rodenhuis testified about the search at the hearing on defendant's motion to suppress. She said that she first went to the bedroom that she believed belonged to defendant. She found a "Converse" shoe beneath a "substantial amount" of clothing in the closet. Defendant argues that, once Rodenhuis discovered the shoe, she should have stopped searching. However, Rodenhuis testified that, although "it appeared to be very similar [to the tread pattern on Dugas' car]," she did not know if it was the same shoe. Therefore, she was authorized to continue searching for a shoe matching the description in the warrant.

Rodenhuis then looked through a door that appeared to lead to another closet. It actually led to an attic space, in which she discovered growing marijuana. She testified that once she found the marijuana plants, she "was keeping [her] eyes open for additional drugs."

■　　Rodenhuis returned to the bedroom. Defendant's bed consisted of a mattress on top of wood pallets on the floor. She knelt down, "still looking for the other Converse shoe and any other shoes that might be relevant." She found "a couple" of baggies with mushrooms in them "right underneath the lip of the mattress." She conceded that they were not in plain view. Defendant contends that, by lifting the mattress, Rodenhuis exceeded the scope of the warrant, because the "police were entitled to look for such shoes only in places where it would be reasonable and likely to find such shoes." On cross-examination, when asked why she reached under the lip of the bed, Rodenhuis answered:

> "Because I could see it's not really on a platform that extends out to the end of the mattress. I wasn't certain what it was on or what was underneath there, so I lifted the mattress up to look underneath."

One of the photographs that were admitted into evidence during the hearing on defendant's motion to suppress shows that the mattress extends a few inches beyond the edge of the pallet on which it rests. There is a space between the mattress and the floor in which a shoe could easily become lodged without creating a visible bulge in the mattress. Therefore, it was reasonable for the officer to lift the edge of the mattress to look for a shoe. The fact that she was also looking for more drugs at that point did not invalidate the search, because the search never exceeded the permissible scope of the warrant. When Rodenhuis found the mushrooms, she was authorized to seize them. ORS 133.585; ORS 133.535; *State v. Handran*, 97 Or App 546, 777 P2d 981, *rev den* 308 Or 405 (1989).

The trial court properly denied defendant's motion to suppress. Defendant assigns no error relating to his conviction for criminal mischief.

Affirmed.