Argued and submitted November 30, 1990, affirmed October 21, 1992,
reconsideration denied March 17, petition for review pending 1993

## STATE OF OREGON,
*Respondent,*

*v.*

## GREGORY ALAN FOLLETT,
*Appellant.*

## (87-CR-0620-WE; CA A50664)

840 P2d 1298

Lawrence J. Hall, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

De MUNIZ, J.

Buttler, P. J., concurring in part; dissenting in part.

**De MUNIZ, J.**

Defendant appeals his convictions for possession of a controlled substance, driving under the influence of intoxicants (DUII) and driving while suspended. ORS 475.992(1); ORS 813.101; ORS 811.175. The issue is whether evidence discovered during a warrantless search of his car, after he suffered an apparent seizure at the police station, is admissible under the "emergency exception" to the warrant requirement. We hold that the evidence is admissible and affirm.

■ In reviewing the lawfulness of a warrantless search, we are bound by the trial court's findings of historical facts that are supported by evidence in the record. *State v. Stevens,* 311 Or 119, 126, 806 P2d 92 (1991). Accordingly, we take the facts from the trial court's opinion and order denying defendant's motion to suppress.

Deputy Sheriff Moyer went to a grocery store while he was off duty. After parking his car, he saw defendant driving at an unusually slow speed through the parking lot. Defendant parked his car straddling two spaces, with the end of the car extending into the traffic lane. He got out of the car and had difficulty inserting his key into the door lock. He opened the trunk and stood by it for a few moments, but Moyer could not see what he was doing. Then, he closed the trunk and went into the store. He picked up a can of dog food and tried to put it in his basket, but he missed. He picked up another can, tried to put it in the basket and missed again. Moyer approached defendant, but did not smell alcohol. Moyer called 911 to summon a uniformed officer; then he followed defendant outside. He asked defendant if he was okay, and defendant mumbled that he was ill and taking medication. Moyer identified himself as an officer and told defendant that a uniformed officer was on the way. He did not allow defendant to drive or walk away, but he did allow him to call his girlfriend.

Officers Sawyer and Walsh arrived, and Moyer told Sawyer what he had observed. Sawyer asked defendant for identification. Defendant said that he had none. His eyes were glassy, and he did not focus on Sawyer when the officer spoke to him. Sawyer asked defendant about his wallet, which he

could see in defendant's pocket. Defendant grinned, turned around and pulled the wallet out, but shielded it from Sawyer's view. He took out a rental receipt that had his name on it and told Sawyer that his license was probably at home. Defendant's demeanor alternated several times between cooperation and belligerence. His mouth twitched, and he was unsteady on his feet. Sawyer arrested him for DUII.

Walsh took defendant to the police station. Sawyer went to search defendant's car, but the door was locked, so he went to the police station. When he arrived, defendant was struggling with three officers and "displayed uncharacteristic strength." After the fracas, defendant lay on the floor. His eyes rolled back in his head. He foamed at the mouth, drooled and began making "guttural sounds." Sawyer became concerned about defendant's welfare. Defendant's condition was consistent with what Sawyer knew to be the symptoms of cocaine overdose. Sawyer searched defendant's wallet and jacket to try to determine what substance defendant may have ingested. He found some marijuana.

Sawyer decided to return to defendant's car and search it in an effort to determine what defendant had ingested. When he returned to the parking lot, defendant's girlfriend and another person were trying to unlock the car by inserting a coat hanger through the window frame. Sawyer asked the girlfriend if she knew what defendant might have consumed, and she said that she did not. Sawyer opened the car. In it, he found a piece of glass and defendant's Oregon I.D. card. Each had a white powdery substance on it. Sawyer radioed the police station and said what he had found. Then, he searched further and found two small bags containing cocaine.

■ The state and federal constitutions independently prohibit warrantless searches and seizures, unless police act within one of the established exceptions to the warrant requirement. *State v. Stevens, supra,* 311 Or at 126. The trial court ruled that the search of defendant's wallet, jacket and car were all valid under the "emergency doctrine" and denied his motion to suppress.[1]

---

[1] The opinion did not discuss the state's argument that the searches were also valid incident to an arrest.

In *State v. Bridewell*, 306 Or 231, 759 P2d 1054 (1988), the Supreme Court observed that there are actually two "emergency exceptions" to the warrant requirement of Article I, section 9. In that case, the police had responded to a report by the defendant's friend that she had been unable to contact him for several days. When they arrived at his house, the front door was open. They went in and found the house in disarray. The officers did not find the defendant in the house, so they checked his workshop, which was about 125 yards away. The shop door was open, and the officers walked in. Inside, they found marijuana plants, and the defendant was charged with manufacturing a controlled substance. ORS 475.992(1).

■ The court first examined whether the marijuana plants were admissible under the "Emergency/Exigent Circumstances" doctrine. Evidence that police discover after a warrantless entry will not be suppressed, if the police faced exigent circumstances and had probable cause to believe that a crime had been committed. The court concluded that neither requirement had been met. 306 Or at 236.

Next, the court examined the admissibility of the evidence under the "Emergency Aid Doctrine," which it had tacitly recognized, but had never applied. 306 Or at 236-37 (citing *State v. Davis*, 295 Or 227, 238, 666 P2d 802 (1983)). The court distinguished this exception by noting that it "does not require probable cause to believe that a crime has been committed," although it does require a "true emergency." 306 Or at 236. The court emphasized:

> "We never have expressly held that emergencies solely justify warrantless entries in a criminal context, and we decline to do so here." 306 Or at 237.

The court found that the Emergency Aid Doctrine did not apply, because the threshold requirement of a true emergency had not been met. 306 Or at 237.

Because the Supreme Court has yet to apply the "Emergency Aid Doctrine," its precise contours remain unclear. We have relied on *State v. Bridewell, supra*, in holding that evidence discovered after a warrantless entry in a noncriminal context is inadmissible. We relied on this passage:

"In situations not implicating criminal law enforcement functions and not justified by the emergency/exigent circumstances exception, law enforcement officers, like private individuals, also may enter to render emergency assistance. [H]owever, incriminating evidence arising from the intrusion by law enforcement officers must be suppressed." 306 Or at 239. (Footnotes omitted.)

That passage is *dictum*, because the court had already concluded that there had been no emergency, and it is inconsistent with the court's express declaration that it did not decide whether "emergencies *solely* justify warrantless entries in a criminal context." 306 Or at 237. (Emphasis supplied.) If a warrantless entry was justified *solely* by a true emergency, then the entry would not occur in a criminal context. An entry in a noncriminal context would not be within the scope of the "Emergency Aid Doctrine," as described in *Bridewell*, despite the fact that the Supreme Court "tacitly has embraced" it. 306 Or at 236.

*Bridewell's* dictum cannot be satisfactorily reconciled with the court's reasoning in *State v. Miller*, 300 Or 203, 709 P2d 225 (1985), in which the court expressly recognized an "emergency exception" to the warrant requirement. In *Miller*, a psychiatrist had told an officer that the defendant claimed to have killed someone. The defendant admitted to the officer that he had hurt somebody, that he "couldn't wake him up" and that the person was in his motel room. The officer took the defendant's keys, opened his motel room and found the victim's body. In holding that the entry into the defendant's room was lawful under the emergency exception, the court said:

"[T]he initial entry into defendant's room was lawful based upon the police officer's reasonable belief, in the circumstances, that he might be able to render lifesaving medical assistance to the victim." 300 Or at 229.

The court held that evidence relating to the discovery of the victim's body was properly admitted at the defendant's trial. 300 Or at 230.

Although the warrantless entry was related to a criminal investigation, the officer's purpose was to render emergency aid to the victim. In justifying the entry on that ground, the court made no mention of any requirement that

the officer had to reasonably believe that a crime had been committed or that evidence of a crime would be found in the defendant's room. We recognize that such a discussion was not critical to the decision in *Miller*, because the officer's belief that he could render emergency assistance to the victim could only have been reasonable if he reasonably believed that evidence of a crime (*i.e.*, the victim) would be found in the defendant's room. However, it is significant that the court did not mention it at all. Instead, it found that the warrantless entry was lawful on the basis of the officer's reasonable belief that he might be able to save the victim's life.[2]

In this case, the scope of what the "Emergency Aid Doctrine" entails is squarely before us. Sawyer had lawfully arrested defendant for DUII. He returned to defendant's car to try to find out what substance caused defendant's apparent seizure. We must determine whether evidence that he discovered while attempting to ameliorate an emergency is admissible in a prosecution against defendant.

In *State v. Sanchez*, 105 Or App 451, 805 P2d 153 (1990), we concluded that, even if there is a true emergency, crime evidence discovered after a warrantless entry is inadmissible if the police lacked "a reasonable belief or suspicion of criminal activity." 105 Or App at 455. However, when a warrantless entry is made solely for the purpose of alleviating an emergency, preexisting suspicion of criminal activity is irrelevant. The proper focus for assessing the lawfulness of an entry, and the admissibility of evidence, under the "Emergency Aid Doctrine" is the emergency itself. Consequently, our previous decisions that have relied on the *dictum* in *Bridewell* have missed the mark. *See State v. Sanchez, supra*; *State v. Martin*, 100 Or App 256, 785 P2d 801 (1990); *State v. Bramson*, 94 Or App 374, 765 P2d 824 (1988).

In defining the contours of the "Emergency Aid Exception" to the warrant requirement of Article I, section 9, the decisions of other courts that have addressed the issue are instructive. The New York Court of Appeals set out these requirements for the "emergency exception":

---

[2] We also recognize that *Miller* was decided under the Fourth Amendment. *See State v. Miller, supra*, 300 Or at 225. However, the court's opinion in *State v. Bridewell* reveals that its analysis in *Miller* is applicable to warrantless searches under Article I, section 9.

"(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.

"(2) The search must not be primarily motivated by intent to arrest and seize evidence.

"(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched." *People v. Mitchell*, 39 NY2d 173, 177, 383 NYS2d 246, 347 NE2d 607, *cert den* 426 US 953 (1976).

Several courts have adopted that language and have held that evidence discovered after a warrantless entry to render "emergency aid" is admissible.[3] At least two courts have expressly declared that those guidelines delimit the "Emergency Aid Exception." *See Gallmeyer v. State, supra* n 3, and *State v. Fisher, supra* n 3.

We are persuaded that, with some modification, the framework articulated by the New York court describes the "Emergency Aid Doctrine" that provides an exception to the warrant requirement of Article I, section 9. Our primary objection to New York's test is its third prong, which requires that an officer have "some reasonable basis, *approximating probable cause*, to associate the emergency with the area or place to be searched." *People v. Mitchell, supra*, 39 NY2d at 177. (Emphasis supplied.) In Oregon, "probable cause" means more likely than not. *See* ORS 131.005(11); *State v. Chambless*, 111 Or App 76, 824 P2d 1183, *rev den* 313 Or 210 (1992). That standard places too high a burden on police officers who are attempting to render lifesaving assistance in an emergency situation. An officer should not be precluded from trying to save a life simply because there may be less than a 50/50 chance of succeeding. A basis that approximates "reasonable suspicion" is more appropriate. Additionally, we note that the Oregon Supreme Court has indicated that the emergency must be a "true emergency." *State v. Bridewell, supra*, 306 Or at 237.

---

[3] *See Gallmeyer v. State*, 640 P2d 837, 842 (Alaska Ct App 1982); *State v. Fisher*, 141 Ariz 227, 237, 686 P2d 750 (1984); *State v. Plant*, 236 Neb 317, 325, 461 NW2d 253 (1990); *State v. Nichols*, 20 Wash App 462, 465, 581 P2d 1371 (1978). In *Lubenow v. N.D. State Highway Com'r*, 438 NW2d 528, 533 (ND 1989), the court affirmed the revocation of the petitioner's driver's license on the basis of evidence discovered after entering his garage to render emergency assistance.

■  We conclude that the Emergency Aid Doctrine provides an exception to the warrant requirement of Article I, section 9, when these conditions are met:

(1)  The police must have reasonable grounds to believe that there is an emergency and an immediate need for their assistance for the protection of life.[4]

(2)  The emergency must be a true emergency — the officer's good faith belief alone is insufficient.

(3)  The search must not be primarily motivated by an intent to arrest or to seize evidence.

(4)  The officer must reasonably suspect that the area or place to be searched is associated with the emergency and that, by making a warrantless entry, the officer will discover something that will alleviate the emergency.

■  We now apply this test to the facts of this case. After struggling with officers at the police station, defendant lay on the floor. He foamed, drooled and made "guttural sounds." His symptoms were consistent with what Sawyer knew to be the symptoms of a cocaine overdose, and Sawyer believed that it would be helpful to know what substance defendant had consumed. Dr. Miller, an emergency room physician, testified that knowing what substance a patient in defendant's condition had ingested would be very helpful in determining the appropriate course of emergency treatment. In the light of defendant's symptoms, Sawyer's training and experience, and the doctor's testimony, it is clear that Sawyer observed a true emergency as defendant lay on the station house floor. It is also clear that Sawyer reasonably believed that he could render emergency assistance to defendant by finding out what substance he had ingested. The trial court found that Sawyer's purpose in searching defendant's jacket, wallet and car was to identify that substance. His search was not motivated by intent to arrest or to seize evidence. It was motivated by his desire to save defendant's life.

The final issue is whether Sawyer reasonably suspected that defendant's car was associated with the emergency and that, by making a warrantless entry, he could

---

[4] We need not now decide whether the doctrine is applicable to entries made for the purpose of protecting property, as opposed to saving a life.

discover what substance defendant had consumed. When an officer forms a suspicion that a crime has occurred, that suspicion can be reasonable only if the officer has relied on specific articulable facts. *State v. Valdez*, 277 Or 621, 626, 561 P2d 1006 (1977). Similarly, a reasonable suspicion that life saving information may be located in a particular place requires specific articulable facts. When Sawyer decided to search defendant's car, he knew these facts: Defendant displayed symptoms that were consistent with what appeared to be intoxication on a substance other than alcohol, his intoxication apparently had caused a seizure, his wallet contained no clues as to what the substance was that he had consumed, and he had just been seen driving his car erratically. Those facts suggest that evidence of what substance defendant had ingested would likely be found in the place that defendant had most recently been. That place was his car. Sawyer's suspicion that the car contained information that could address the emergency at hand was reasonable.

His reasonable suspicion was supported by what he observed when he returned to defendant's car. When he returned to the car, Sawyer found defendant's girlfriend trying to unlock it by sliding a coat hanger through the window. Because she was not using a key to open the car, he could reasonably infer that she was trying to get into the car for a purpose other than to drive it away. He could reasonably infer that there was something in the car that she wanted to remove expeditiously. In the light of his observations at the police station, and the fact that he knew she had just seen defendant being arrested next to his car, his suspicion became even more reasonable.

Faced with a true emergency and the need for prompt identification of the drug that defendant had consumed, Sawyer searched the car for information that he believed could save defendant's life. His entry into the car was lawful under the "Emergency Aid Doctrine." The trial court properly denied defendant's motion to suppress.[5]

Affirmed.

---

[5] Defendant presents no cognizable argument that his conviction for driving while suspended should be reversed.

**BUTTLER, J.,** concurring in part, dissenting in part.

Defendant appeals his convictions for possession of a controlled substance (cocaine), ORS 475.992, driving under the influence of intoxicants, ORS 813.010, and driving while suspended. ORS 811.175. He assigns error to the denial of his motion to suppress the fruits of a warrantless search of his car, which resulted in his conviction for possession of cocaine. The majority correctly states that the question is whether that warrantless search was permissible under the "emergency exception" to the warrant requirement. Because I disagree with its conclusion that it was permissible under that exception, I dissent from the majority's affirmance of defendant's conviction for possession of a controlled substance.

The trial court found, as the state contended, that the purpose of the search was to find out what substances defendant might have ingested. The evidence supports that finding, and we are bound by it. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968). In upholding the search, the trial court relied primarily on the state's argument that the emergency aid doctrine permitted the warrantless entry into defendant's car in order to render medical assistance to defendant, who was at the police station. In *State v. Watson*, 95 Or App 134, 137-38, 769 P2d 201 (1989), we said:

> "[W]hen police act in a capacity other than criminal law enforcement, entry into protected areas may only be made pursuant to 'statutory or other authority from a politically accountable body.' *State v. Bridewell*, [306 Or 231, 239, 759 P2d 1054 (1988)]; *see also State v. Pidcock*, 306 Or 335, 341-42, 759 P2d 1092 (1988); *Nelson v. Lane County*, 304 Or 97, 101-06, 743 P2d 692 (1987). Only if that authority exists and if discovery otherwise meets the plain view exception to the warrant requirement is the evidence admissible. *Nelson v. Lane County, supra*, 304 Or at 104 n 5; *see also State v. Pidcock, supra*. When presented with situations not directly related to a criminal violation investigation, police may still enter protected areas to render aid or assistance, notwithstanding a lack of statutory authority, but, under Article I, section 9, any evidence discovered is inadmissible in a criminal prosecution. *State v. Bridewell*, [306 Or 231], 239-40, 759

P2d 1054 (1988); *see also State v. Okeke*, 304 Or 367, 373, 745 P2d 418 (1987)."

That statement of the law is a fair summary of *State v. Bridewell, supra*, and the state accepts it as such. The majority, however, does not. It treats the statements in *Bridewell* as *dicta* that we may ignore. In *Bridewell*, the Supreme Court analyzed the various related exceptions to the warrant requirement that might be applicable in this state: emergency/exigent circumstances; emergency aid doctrine and community caretaking function. Its analysis was relevant to its decision and was intended to articulate the circumstances in which those exceptions apply in Oregon. None of those exceptions applies here. The court recently quoted part of the above quote from *State v. Watson, supra*, with apparent approval; it held, however, that the law as we stated it was not applicable in that case, because the police allegedly had entered with the consent of the occupant. *State v. Paulson*, 313 Or 346, 833 P2d 1278 (1992).

As indicated, the state accepts our summary of the applicable law in *Watson*, and it argues that the search in this case is authorized under that statement of the law. It contends that, because defendant was a prisoner who required medical treatment while in custody, Oregon law requires that treatment be provided him. ORS 169.140.[1] Although the statute does not expressly authorize custodians to search a protected place, the state contends that that authority may be implied if that action is necessary to accomplish the statutory duty to provide medical aid. In other words, there was the necessary statutory authority to permit Sawyer's warrantless entry into defendant's car to assist in providing medical aid to defendant.

If the state is correct, Sawyer would have been justified in searching, not only defendant's car, but also any place, including defendant's home, where evidence that might be helpful in treating defendant might be found. I find no such implied authority under that statute. Accordingly, without

---

[1] ORS 169.140 provides:

"The keeper of each local correctional facility shall furnish and keep clean the necessary bedding and clothing for all prisoners in the custody of the keeper, and shall supply them with wholesome food, fuel and necessary medical aid."

statutory authority, the emergency exception is not applicable, and evidence obtained by the search of defendant's car must be suppressed. *State v. Bridewell, supra.*

Instead of responding to the state's *only* argument in support of the emergency exception, the majority goes off on a frolic of its own and, in modified form, adopts the emergency exception applied in New York and in several other states. 115 Or App at 679 n 3. In its modified form, the majority's rule reduces the New York requirement that the police have a reasonable basis approximating probable cause to a requirement of only a "reasonable basis that approximates reasonable suspicion" to associate the emergency with the place to be searched. 115 Or App at 679. Apparently, the majority's newly-concocted rule would require less than reasonable suspicion.

First, it is noteworthy that, in all of the cases cited by the majority,[2] as in all of the Oregon cases applying the emergency aid exception, the entry was justified to give aid to a person who was inside the protected area sought to be searched. Defendant was not in his car when Sawyer entered it.

Second, regardless of whether the Oregon law as enunciated in *Bridewell* or the majority's new "rule" is applied, there must be a true emergency. The majority concedes that. The trial court did not expressly conclude that there was a true emergency that could justify Sawyer's searching defendant's car. The majority emphasizes that "defendant's condition was consistent with what Sawyer *knew* to be the symptoms of cocaine overdose." 115 Or App at 675. (Emphasis supplied.) It refers to Miller's testimony that knowing what substance a person in defendant's condition had ingested would be helpful in determining the appropriate course of treatment. However, it ignores Miller's testimony that preceded the statement relied on. He testified that, if someone is suspected of a potentially lethal cocaine or methamphetamine overdose, the patient should be taken

---

[2] Arguably, *Gallmeyer v. State*, 640 P2d 837 (Alaska Ct App 1982), cited by the majority, 115 Or App at 679 n 3, did not involve an entery to provide emergency aid to a person inside. However, the court reasoned that it was "necessary to protect life," because the man inside had a gun and had threatened his wife, who was not inside when the officer arrived.

immediately to the hospital or, at the least, an ambulance or EMT should be called by the police or other person discovering the situation. He said that medical evaluation should be obtained as soon as possible for a person who was "engaging in seizures, * * * eyes rolling up into the head, * * * foaming or drooling at the mouth, * * * making guttural sounds, phasing in and out of reality, and * * * displaying extraordinary physical strength." Any delay before getting medical help should be avoided: "The time element * * * is very important," he said. Although Miller agreed that it would be very helpful to know what substance the patient had ingested, the priority is to seek medical help. Approximately 20 minutes had elapsed since defendant was taken from the parking lot. Miller stated that a delay of 15 or 20 minutes to search for information as to what had been ingested would not be wise.

Because Sawyer recognized defendant's symptoms as relating to cocaine overdose, the record tells us that defendant should have been taken immediately to a hospital or alternative medical aid should have been sought immediately. In that sense, there was no true emergency that justified Sawyer's search for what he already knew. No one contacted the hospital or any medically trained personnel.

Third, the majority holds that the officer must have "a reasonable basis that approximates 'reasonable suspicion' " to associate the emergency with the place to be searched. 115 Or App at 679. It goes on to say that Sawyer reasonably suspected that defendant's car was associated with the emergency. Although the majority acknowledges that a suspicion, in order to be reasonable, must be based on specific articulable facts, it does not refer to Sawyer's testimony in which he articulated specific reasons why his suspicion was reasonable. Rather, it refers to evidence on which Sawyer *might* have based a reasonable suspicion. It is not our function to do that. If Sawyer had articulated those reasons, we could say that he subjectively believed them, and we could then determine whether they were objectively reasonable. *See State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). Sawyer not only did not articulate those reasons, he said that he thought that he could search the car incident to defendant's arrest, although his primary purpose was to find the substance that defendant had ingested. Because the state

did not rely on Sawyer's reasonable suspicion, or something that "approximates" that, he did not testify on that issue.

Accordingly, I would conclude that, under *Bridewell* or under the new test that the majority adopts, Sawyer was not authorized to search defendant's car.

In the trial court, the state contended, alternatively, that the search can be justified as incident to defendant's arrest for DUII to search for evidence of that crime and to prevent destruction of the evidence. A search incident to arrest is permissible if it is close in time and space to the arrest and if the intensity of the search is commensurate with the crime. *State v. Caraher*, 293 Or 741, 653 P2d 942 (1982). Here, the search was neither close in time nor in space. It occurred approximately 20 minutes after defendant had been arrested and taken to jail in handcuffs and some undetermined longer time before defendant was arrested after he had left his car to enter the store. As we pointed out in *State v. Anderson*, 81 Or App 267, 725 P2d 394 (1986), and *State v. Ridderbush*, 71 Or App 418, 692 P2d 667 (1984), when there is a logical break in the arrest process, any justification for a search incident to arrest under *Caraher* evaporates.

Finally, the state contends, for the first time on appeal, that the search can be justified, because Sawyer had probable cause to believe that evidence of the crime of DUII would be found in defendant's car and because there were exigent circumstances justifying the failure to obtain a warrant. Probable cause under the Oregon Constitution has both subjective and objective components. *State v. Owens, supra*, 302 Or at 204. Sawyer did not testify that he had probable cause to believe that evidence of DUII would be found in defendant's car; he said, and the trial court found, that he was looking for the substance or substances that defendant might have ingested in order to provide medical treatment for defendant. The trial court found that it was reasonable for Sawyer to enter defendant's car for that purpose, not that he had probable cause to search for evidence of crime. Therefore, the subjective component of probable cause is lacking.

Furthermore, even if Sawyer had testified that he had probable cause, it is doubtful that the objective component is supported by the record. The burden is on the state to

establish probable cause; it did not do so. Because it did not rely on that exception in the trial court, Sawyer did not testify about it, and the court did not address it; it was irrelevant to the state's theory.

Because evidence obtained as a result of the search of defendant's automobile must be suppressed, the conviction for possession of a controlled substance must be reversed. However, I would affirm the conviction for driving under the influence of intoxicants. Trial was to the court and the only evidence consisted of police reports, defendant's driving record and a laboratory report. The trial judge expressly limited his finding of guilt on the DUII charge to the observations of defendant in the police report relating to his arrest at the parking lot. There is no mention of what intoxicant defendant might have ingested. I would also affirm the conviction for driving while suspended, because evidence of defendant's suspension would inevitably have been discovered by the "proper and predicable investigatory procedure," *State v. Miller*, 300 Or 203, 226, 709 P2d 225 (1985), *cert den* 475 US 1141 (1986), of checking with the Motor Vehicles Division.

Accordingly, I dissent only from the affirmance of defendant's conviction for possession of cocaine.

Joseph, C. J., and Durham, J., join in this dissent.