## STATE OF OREGON,
*Respondent,*

*v.*

## $113,871 IN U.S. CURRENCY,
*Defendant,*

*and*

## JAMES ROBINSON
*Appellant.*

(93-CV-1188; CA A92470)

954 P2d 218

Jenny Cooke argued the cause and filed the briefs for appellant.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Claimant appeals a judgment in an *in rem* forfeiture proceeding that forfeited his interest in $113,871 in United States currency. We affirm.

On March 27, 1993, Trooper Hoffman stopped a car to issue a warning for speeding. Hoffman approached the driver and asked him for his license and the car's registration. The driver gave Hoffman his driver's license and told him that the car belonged to claimant, who was a passenger. Hoffman then asked claimant for his driver's license and the registration. Claimant gave Hoffman those things. Hoffman ran a "wants and warrants" check on both the driver and claimant and discovered that the driver's operator's license was suspended. Hoffman informed the driver that he was going to issue him a citation and asked him to join him at the rear of the car where he would fill out the citation. The driver told Hoffman that he and claimant were driving from Seattle to Sacramento for the weekend to visit friends. Hoffman was suspicious of that explanation for the trip because it was already Saturday morning and they were far from Sacramento. He issued the citation, telling the driver that he could not continue to drive, but that claimant could take over because his license was valid. He told the driver that they were free to go.

Immediately after telling the driver that he was free to go, Hoffman asked the driver if he would mind answering a few questions. The driver agreed to answer them. Hoffman asked the driver if he belonged to any gangs or was affiliated with any drug traffickers. The driver denied any connection to either gangs or drug traffickers. Hoffman then approached claimant, who had gotten out of the car in order to switch places with the driver. Hoffman asked claimant if he could talk to him as well. After claimant agreed, Hoffman again stated concerns about gangs and drug trafficking. He then asked claimant if he had any luggage beyond the luggage visible in the rear seat. Claimant said that he had some items in the trunk. Hoffman asked if he could look at what was in the trunk and claimant agreed that he could. Claimant opened

the trunk and, leaning into the trunk, moved a pair of overalls over a black shopping bag that seemed to have a vinyl case in it. Hoffman told claimant that he thought that claimant was trying to conceal the bag and asked claimant what was in it. Claimant said it contained personal papers and consented to Hoffman's request to look into it. Hoffman looked into the bag and discovered a case with a plastic bag full of bundles of U. S. currency of various denominations that had been either taped or banded together. The bundles were consistent with other bundles of currency that the officer had seen in narcotics cases. Hoffman told claimant and the driver to kneel at the side of the road while he called for backup. Hoffman summoned a canine unit so that the car could be searched for drugs, and the dog alerted to the trunk and the money. The money was confiscated and claimant was given a receipt for it.

The state brought this forfeiture proceeding pursuant to ORS 475A.005 to ORS 475A.160.[1] Following a trial, the trial court entered a judgment of forfeiture. Claimant appeals.

■ On appeal, claimant assigns error to the trial court's conclusion that the Oregon Forfeiture Act is constitutional, arguing that the Act violates Article I, section 11, of the Oregon Constitution and the Fourteenth Amendment's due process clause. Claimant argues that, under the analysis applied in *Brown v. Multnomah County District Court*, 280 Or 95, 570 P2d 52 (1977), a civil forfeiture proceeding is actually a criminal proceeding and, as a result, a claimant involved in such a proceeding is entitled to receive the same protections guaranteed a criminal defendant under Article I, section 11. The Supreme Court rejected the proposition that a civil forfeiture proceeding is actually a criminal proceeding in *State v. Curran*, 291 Or 119, 128-29, 628 P2d 1198 (1981).[2]

---

[1] At the time the state brought this proceeding, the cited statutes were inserted, but not codified, at the beginning of ORS chapter 166. Or Laws 1989, ch 791, *as amended by* Or Laws 1991, ch 934. They are now codified at ORS 475A.005 to ORS 475A.160. We refer to the codified provisions throughout the opinion but apply only the provisions that were in effect when the seizure occurred.

[2] Although the Supreme Court analyzed a different forfeiture statute in *Curran* from the one at issue here, its analysis of forfeiture proceedings controls our analysis of this Act. *See City of Lake Oswego v. $23,232.23 in Cash*, 140 Or App 520, 534-37, 916 P2d 865, *rev den* 324 Or 322 (1996) (applying analysis in *Curran* to the Act).

Although the court in *Curran* did not discuss the effect of *Brown* on its analysis, we are bound by *Curran*, and, therefore, reject claimant's Article I, section 11, argument.

■     Claimant also argues that the allocation of the burden of proof in this forfeiture proceeding violated his due process rights under the Fourteenth Amendment. ORS 475A.080 provides:

> "In all actions brought for forfeiture, the burden of persuasion shall lie upon the claimant, provided that probable cause to believe that the property is subject to forfeiture shall first be shown by the forfeiting agency."

The federal civil forfeiture statute has a similar provision. Each of the seven circuits that has analyzed the constitutionality of that burden has concluded that it does not violate due process because a forfeiture proceeding is a civil proceeding and, as such, the legislature has the freedom to place the burden of persuasion on the claimant.[3]

We reach the same conclusion. Generally, the legislature may establish the burden of proof in a civil case without infringing on a litigant's due process rights. *See Sherris v. City of Portland*, 41 Or App 545, 553, 599 P2d 1188, *rev den* 287 Or 641 (1979) (" 'Outside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment.' " (quoting *Lavine v. Milne*, 424 US 577, 585, 96 S Ct 1010, 47 L Ed 2d 249 (1976)). As we have already stated, under Oregon law, a forfeiture proceeding is considered a civil proceeding. *See Curran*, 291 Or at 128-29. Therefore, the legislature has a great deal of discretion in assigning the burden of proof in such a proceeding. It is axiomatic that, in exercising that discretion, the legislature has to comply with both the Oregon

---

[3] *United States v. $129,727.00 in US Currency*, 129 F3d 486, 494 (9th Cir 1997); *United States v. One Beechcraft King Air 300 Aircraft*, 107 F3d 829, 829-30 (11th Cir 1997); *United States v. $94,000.00 in US Currency*, 2 F3d 778, 783-84 (7th Cir 1993); *United States v. 228 Acres of Land and Dwelling*, 916 F2d 808, 814 (2d Cir 1990), *cert den sub nom Moreno v. US Drug Enforcement Admin.*, 498 US 1091 (1991); *United States v. Santoro*, 866 F2d 1538, 1544 (4th Cir 1989); *United States v. $250,000 in US Currency*, 808 F2d 895, 900 (1st Cir 1987); *Bramble v. Richardson*, 498 F2d 968, 973 (10th Cir), *cert den sub nom Bramble v. Saxbe*, 419 US 1069 (1974).

and the United States Constitutions, but we are not persuaded by claimant's argument that the legislature has not done so in this case.

Plaintiff's next assignment of error relates to the state's compliance with ORS 475A.035(2), which provides, in part, that property may be seized by any police officer without a court order if:

"(b) There is probable cause to believe that property is subject to forfeiture, provided that the property may constitutionally be seized without a warrant;

"(c) The *seizure is in the course of a constitutionally valid* criminal investigative stop, arrest or *search*, and there is probable cause to believe that the property is subject to forfeiture[.]"

(Emphasis supplied.) The trial court ruled that the state lawfully seized the money because claimant validly consented to the searches that revealed the evidence that gave rise to the probable cause on which the seizure was based.

On appeal, claimant makes several arguments relating to that ruling. First, he argues that Hoffman violated ORS 810.410 when he expanded the scope of the traffic stop to ask claimant about drug trafficking and that that violation constituted a violation of Article I, section 9, of the Oregon Constitution. He claims that, as a result, the money could not be seized under ORS 475A.035(2)(c). While we agree with claimant that Hoffman violated ORS 810.410 when he expanded the scope of the traffic stop,[4] we reject his argument that that action automatically violates Article I, section 9. There is no basis in Oregon law for that conclusion.

---

[4] Under our interpretation of ORS 810.410 in *State v. Taylor*, 151 Or App 687, 950 P2d 930 (1997), Hoffman lacked authority to question claimant about subjects unrelated to the traffic infraction unless he either developed a reasonable suspicion that the relevant individual had committed a crime, *see State v. Dominguez-Martinez*, 321 Or 206, 212, 895 P2d 306 (1995), or the stop had concluded and claimant had had a reasonable opportunity to move on. *See State v. Hadley*, 146 Or App 166, 172, 932 P2d 1194 (1997). In this case, Hoffman began speaking to claimant while claimant was walking around to the driver's seat to leave after the citation had been issued. Thus, he had not yet had a "real time" opportunity to leave. Because, at that point, Hoffman did not have a reasonable suspicion that claimant had committed a crime, he did not have authority under the statute to speak to claimant about subjects unrelated to the traffic infraction.

■ Second, claimant argues that he was unconstitutionally stopped when Hoffman took his driver's license without specific legislative authority or a reasonable suspicion that claimant had committed a crime. Because the search followed that stop, claimant argues that ORS 475A.035(2)(c) did not authorize Hoffman's seizure of the money. We disagree with claimant's analysis. Under ORS 475A.035(2)(c), property may be seized by any police officer without a court order if the *"seizure is in the course of a constitutionally valid* criminal investigative stop, arrest or *search*, and there is probable cause to believe that the property is subject to forfeiture." (Emphasis supplied.) In interpreting the meaning of that statute, we note that the situations in which property can be lawfully seized under the statute are presented in the alternative. In other words, under the statute, if there is probable cause, the relevant property can be seized in the course of a constitutionally valid criminal investigative stop, a constitutionally valid arrest, or a constitutionally valid search. Even if we assume, as claimant argues, that Hoffman unlawfully stopped claimant, the money was seized following a series of searches. The relevant inquiry, then, is not whether the stop was valid, but rather, whether those searches were constitutionally valid. We conclude that they were.

■ Article I, section 9, prohibits unreasonable searches. Generally, in order for a search to be reasonable, the police must have a search warrant or the search must come within one of the recognized exceptions to the warrant requirement. *State v. Paulson*, 313 Or 346, 351, 833 P2d 1278 (1992). Consent is a recognized exception to that requirement. To establish the existence of that exception, the state must prove by a preponderance of the evidence that a person with authority over the property voluntarily consented to the search. *State v. Stevens*, 311 Or 119, 137, 806 P2d 92 (1991). "[T]he burden on the police to show voluntariness when consent occurs after illegal police conduct is greater than when no illegality has occurred." *State v. Kennedy*, 290 Or 493, 502, 624 P2d 99 (1981).

■■ In this case, the trial court concluded that claimant's consent to the searches was voluntarily given. We do not disturb those factual findings made by the trial court that are supported by evidence but "assess anew whether the facts

suffice to meet constitutional standards." *Stevens*, 311 Or at 135. Even applying the more strict standard governing consent obtained after illegal police conduct, we agree with the trial court's conclusion. The trial court found that, after telling the men that they were free to leave, Hoffman asked claimant if he would mind answering a few questions. There is an implicit finding that claimant agreed to do so. According to the findings:

"[Hoffman] again explained the problem with narcotics [trafficking on] the interstate and asked claimant if he had any luggage other than what was visible in the rear seat. [Claimant] said there were some additional items in the trunk. [Hoffman] asked, 'Do you mind if I look at what is in the trunk?' and [claimant] said, 'Sure. Okay.' [Claimant] then went to the driver's door and leaned into the car and retrieved the keys from the car's ignition and returned to the rear of the vehicle and opened the trunk. When the trunk was opened the officer noticed a pair of overalls laying [*sic*] on the spare tire. As [claimant] opened the trunk, he leaned into the truck and pushed the overalls toward the back of the trunk and over a black paper shopping bag which appeared to hold some kind of case. * * * [Hoffman] told [claimant] that he thought [claimant] was trying to conceal the bag and asked [claimant] what was in it. [Claimant] replied, 'It's just my briefcase with personal papers, work papers.' When [Hoffman] asked if he could check the contents, [claimant] said, 'Go ahead.' [Hoffman] then looked into the bag and saw a case with a plastic bag full of bundles of U.S. currency of various denominations which had been taped or rubber banded together."

Claimant does not challenge those findings. Those findings indicate that Hoffman did not coerce claimant to obtain his consent. Hoffman was the only officer present at the scene and he was not acting in a particularly intimidating manner toward claimant. Although Hoffman's actions violated ORS 810.410, there is no evidence that those actions impaired claimant's free will. Considering the totality of the facts and circumstances, we conclude that claimant's consent to the searches was constitutionally valid.[5] Therefore, if Hoffman

---

[5] If we assume that Hoffman had unlawfully stopped claimant, then we would also have to evaluate whether Hoffman exploited that unlawful conduct to obtain claimant's consent to search. *See State v. Rodriguez*, 317 Or 27, 40, 854 P2d 399 (1993). The Supreme Court has held that, in order to find exploitation, the police

had probable cause to seize the money and exigent circumstances existed, the seizure complied with ORS 475.035(2)(c).

■       The trial court concluded that Hoffman had "probable cause to believe that the money was being transported for an illegal purpose" before Hoffman called for the "dog sniff." The trial court found that Hoffman's statements indicated that he subjectively believed that he had probable cause at that point, and it concluded that that belief was objectively reasonable. It held that the following factors supported its conclusion:

> "1) [T]he amount of money; 2) the manner in which the money was bundled, carried and packaged; 3) the false statements made to the officer initially concerning the existence and contents of the briefcase and the purpose for the trip to Sacramento; 4) the odor of cocaine the officer detected when the trunk was opened; and 5) the furtive movements made by claimant after he opened the trunk."

We agree with the trial court's conclusion. In criminal law, probable cause exists when an officer subjectively believes that a crime has been committed and that belief is objectively reasonable under the circumstances. *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). That belief must be that it is more likely than not that a crime has been committed. *State v. Chambless*, 111 Or App 76, 80, 824 P2d 1183, *rev den* 313 Or 210 (1992). The term has the same meaning under the forfeiture statute. Thus, the state had to establish that, when Hoffman seized the money, he subjectively believed that it was more likely than not that that property was subject to seizure under the statute and that that belief was objectively reasonable in the circumstances.

■       On appeal, claimant does not challenge the trial court's finding that Hoffman subjectively believed that he

---

have to "take advantage of the circumstances of their unlawful conduct to obtain the consent to search." *Id*. at 40. There is no evidence that Hoffman took advantage of the alleged stop to obtain consent. Arguably, in fact, there is not even a causal connection between the alleged stop and the request for consent to search because, as a practical matter, claimant would have been in the same position even if Hoffman had not stopped him and he were simply waiting for Hoffman to issue the driver a citation. Therefore, even if, by taking claimant's driver's license, Hoffman unlawfully stopped claimant, we conclude that there was no exploitation of that illegality.

had probable cause to seize the money. Therefore, we accept that finding. Moreover, given the questionable statements the men gave Hoffman about their reason for traveling, claimant's attempt to conceal the bag and his subsequent lie about its contents, the amount of money discovered and the manner in which the money was bundled, carried and packaged, we conclude that an officer in Hoffman's position reasonably could believe that the money was connected with drug trafficking and, therefore, subject to forfeiture under ORS 475A.020(6). Finally, we conclude that exigent circumstances justified seizing the money without a warrant. Because we conclude that Hoffman had probable cause to seize the money before he conducted the "dog sniff," we need not analyze claimant's arguments about that search. We reject claimant's other arguments without discussion.

Affirmed.